**The PEOPLE of the State of Colorado,**
**Plaintiff-Appellee,**

v.

**David L. WELLER,**
**Defendant-Appellant.**

**No. 82SA413.**

Supreme Court of Colorado,
En Banc.

April 9, 1984.

Duane Woodard, Atty. Gen., Norman S. Early, Jr., Dist. Atty., Second Judicial District, Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Donna Skinner Reed, Deputy Dist. Atty., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Terri L. Brake, Sp. Deputy State Public Defender, Denver, for defendant-appellant.

DUBOFSKY, Justice.

The defendant, David L. Weller, appeals his conviction of second degree assault under section 18–3–203(1)(b), C.R.S., after a jury trial in Denver District Court. We affirm the judgment.

On July 31, 1980, Gerald Fleming and his friend Jack Kassell went to the 7–11 at 2609 Federal Boulevard around 2:00 a.m. to purchase rolling papers. Upon learning that they were not sold at the 7–11, Fleming and Kassell returned to their car and found papers on the car seat. Fleming commenced rolling a marijuana cigarette inside the car. At this point, a man approached the car and asked if he could buy a "joint." Fleming initially refused, but then agreed to give away one marijuana cigarette. While Fleming continued rolling the cigarette, the party walked away from the window, and two other men approached the car. One reached through the window, grabbed a bag of marijuana, said "Thanks, Bud" and ran from the car. Fleming pursued on foot. During the chase the party being pursued turned and fired two shots at Fleming.

Kassell initially stayed at the 7–11 and saw the two remaining men enter a van in the parking lot. Upon hearing the shots, Kassell took the car and followed Fleming. He found Fleming kneeling behind a fire hydrant and saw someone running up the street. Kassell drove the car up the street and onto the sidewalk to cut off the person's escape. The person turned around and ran back down the street. Fleming and the person being pursued came face to face on opposite sides of a parked station wagon. Fleming asked for his baggie back, and the person fired a third shot from a distance of ten to fifteen feet, striking Fleming in the chest. Kassell heard the shot, returned to where Fleming was, and put him in the car. They then flagged down a police car. Fleming was taken for medical assistance and Kassell was asked to remain with the police officers.

An officer near the scene heard the gun shots and, seconds later, saw someone run past his car into a nearby alley. The officer radioed a brief description of the person and then pursued on foot. The officer did not locate anyone and called for additional help. Approximately twenty minutes later another officer found the defendant hiding in a storage shed behind a residence near the alley. Two days later a gun was found in a garden about fourteen feet from the storage shed.

The defendant was taken back to the scene of the shooting, where he was identified by Kassell. The next day, August 1, Kassell and Fleming separately were shown the same photographic lineup. Fleming identified the defendant as the party who had shot him, and Kassell identified the defendant as the person Fleming had chased from the 7–11. Both Fleming and Kassell made subsequent in-court identifications of the defendant. The district court denied the defendant's motion to suppress in-court and out-of-court identifications.

The defendant was tried for attempted murder in the first degree, section 18–2–101, C.R.S. and second-degree assault, section 18–3–203(1)(b), C.R.S. During the trial, the defendant moved to require an election of counts. The prosecution agreed that it would rely only on the third shot for the attempted murder charge, and only on the second shot for the assault charge. The jury returned verdicts acquitting the defendant of attempted murder and convicting him of second-degree assault. The defendant moved for a new trial, which was granted May 1, 1981 on the ground that the jury had not been instructed on the definition of "attempt" as it pertains to

second-degree assault. On May 20, 1981, the prosecution filed a motion for reconsideration of the order granting a new trial. The district court granted the motion, concluding that any error in the jury instructions was harmless, and reinstated the jury verdict.

On appeal, the defendant contends that the district court had no authority to revoke its order granting a new trial, and that even if the court did have authority to reconsider its prior decision, its action in this case was an abuse of discretion. The defendant also asserts that he was denied due process by the district court's failure to define "attempt" for the jury in the context of the second degree assault charge; that his conviction of second-degree assault, a class 4 felony, violated his right to equal protection because identical conduct is proscribed by the criminal attempt statute, section 18–2–101(1), C.R.S., which, if applied, would have resulted in a conviction of a class 5 felony; and that the district court erred in not suppressing the in-court and out-of-court identifications made by the two witnesses. We affirm the defendant's conviction.

## I.

The defendant contends that the district court was without jurisdiction to revoke its order granting a new trial. Courts examining this issue have reached different results. In some jurisdictions the authority of a trial court with respect to a new trial motion terminates with the denial or grant of the motion. In *Burton v. State*, 296 So.2d 79 (Fla.Dist.Ct.App.1974), the court held:

> [W]here a defendant has timely moved for a new trial and the matter has been heard upon the merits and thereafter an order entered either granting or denying the motion, absent fraud or clerical error the court is without authority to entertain or consider a petition for rehearing addressed to such order.

*Id.* at 80. Reasons given for this rule were that it would give the order finality, and

that the prosecution should be prepared to refute the allegations of a new trial motion at the hearing. The Florida Supreme Court vacated this decision in *State v. Burton*, 314 So.2d 136 (Fla.1975), holding that the lower court's statement of the rule was correct, but that the motion for reconsideration established fraud. For similar holdings that a trial court has no authority to reconsider its order granting or denying a motion for new trial, see *State Farm Mutual Ins. Co. v. Senn*, 277 Ala. 508, 172 So.2d 533 (1965); *People v. Lindsey*, 275 Cal.App.2d 340, 79 Cal.Rptr. 880 (1969); *State v. Morris*, 359 So.2d 478 (Fla.Dist.Ct. App.1978).

Other courts have held that a trial court may reconsider an order granting or denying a new trial. In *People v. Thompson*, 38 Ill.App.3d 101, 347 N.E.2d 481 (1976), the court cited the rule that a trial court retains jurisdiction to modify an interlocutory order, held that an order granting a new trial is interlocutory, and concluded that a trial court has jurisdiction to reconsider its motion granting a new trial. In *United States v. Spiegel*, 604 F.2d 961 (5th Cir.1979), *cert. denied*, 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980), the Fifth Circuit upheld a trial court's reconsideration of a previous order granting a new trial, holding that where the motion to reconsider was timely the trial court had jurisdiction to reconsider. *Accord State v. Ornelas*, 15 Ariz.App. 580, 490 P.2d 25 (1971); *Fine v. Commonwealth*, 312 Mass. 252, 44 N.E.2d 659 (1942); *People v. Poole*, 7 Mich.App. 237, 151 N.W.2d 365 (1967); *People v. Phino*, 80 A.D.2d 804, 437 N.Y. S.2d 104 (1981).

 The cases cited above occur in various factual settings. Some allow reconsideration of an order granting or denying a new trial after a final judgment has been entered, while others forbid reconsideration at any time. The limited issue before this court is whether a trial court may rescind its interlocutory order granting a new trial before a final judgment is en-

tered,[1] and before a notice of appeal is filed.[2] We hold that it may.

This court addressed an analogous question in *People v. Lewis,* 659 P.2d 676 (Colo. 1983), where the issue was whether a district judge might reconsider a motion to suppress previously denied by another district judge. Noting that a motion to suppress is interlocutory in character, and that neither *res judicata* nor collateral estoppel applies to a ruling which is less than a final judgment, this court held that a judge should be "accorded the discretion to entertain a motion to reconsider a previously denied motion to suppress when the motion to reconsider is predicated on a representation that substantial changes in law render the prosecution's evidence inadmissible at trial." *Id.* at 680. We commented: "It would make little sense to hold that if a judge responsible for any final judgment in the case perceived that a palpable error had been committed in the resolution of a pretrial motion, he nonetheless could take no measures to correct it." *Id.*

Likewise, it would make little sense to hold that if a judge responsible for the final judgment perceived that a motion for a new trial had been granted erroneously, he nonetheless could not reconsider his order before final judgment is entered or a notice of appeal filed. It also would make little sense for us to require the expense and burdens of a new trial if the judge who originally ordered the trial believes that he erred in granting the new trial motion.

■ As an alternative argument, the defendant asserts that even if the court had jurisdiction to reconsider its order, it abused its discretion in granting the motion for reconsideration in this case. We agree that in some cases a district court might abuse its discretion by revoking its previous order granting a new trial, but here there was no abuse of discretion where the motion for reconsideration was filed nineteen days after the new trial was ordered and before it commenced.

## II.

The district court originally granted the defendant's new trial motion on the ground that his due process rights were violated by the failure of the court to instruct the jury on the definition of "attempt" in the context of second-degree assault. When reconsidering its order for a new trial, the district court concluded that the instructional error was harmless. The defendant now asks this court to reverse the order denying a new trial because of the asserted deficiency of the second-degree assault instruction.

■ The jury was instructed that the defendant would be guilty of second-degree assault if:

With intent to cause bodily injury to another person, he causes or attempts to cause such injury to any person by means of a deadly weapon.

The defendant did not object to this instruction at trial, and therefore, our review of the instruction is under the plain error standard. C.R.Cr.P. 30 and 52(b); *People v. Saghy,* 190 Colo. 79, 543 P.2d 1243 (1975); *People v. Tilley,* 184 Colo. 424, 520 P.2d 1046 (1974). Plain error affects the substantial rights of the accused. C.R. Cr.P. 52(b); *People v. Peterson,* 656 P.2d 1301 (Colo.1983); *People v. Dillon,* 655 P.2d 841 (Colo.1982); *Vigil v. People,* 196 Colo. 522, 587 P.2d 1196 (1978). To qualify as plain error, there must be a reasonable possibility that the alleged erroneous instruction contributed to the defendant's conviction. *People v. Dillon,* 655 P.2d at 845; *People v. Aragon,* 186 Colo. 91, 525 P.2d 1134 (1974).

■ The instruction given at trial tracks the language of the pertinent provision of the second-degree assault statute, section

---

**1.** This court has determined that an order granting a new trial is an interlocutory order. *People v. Cochran,* 176 Colo. 364, 490 P.2d 684 (1971). Final judgments are described in C.R.Cr.P. 32(c).

**2.** In *People v. Dillon,* 655 P.2d 841 (Colo.1982), we held that a trial court is without jurisdiction to grant a motion for new trial once a notice of appeal is filed.

18–3–203(1)(b), C.R.S.[3] The defendant argues that the jury should have been given the definition of attempt found in the criminal attempt statute, section 18–2–101(1), C.R.S.:

A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense. A substantial step is any conduct, whether act, omission, or possession, which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

We do not agree that the court was required to give the definition of attempt found in the criminal attempt statute. The defendant was not charged under that statute. He argues, however, that the "criminal attempt" definition establishes a mental state requirement not found in the instruction. That is incorrect. The second-degree assault provision requires, as stated in the instruction, "intent to cause bodily injury to another person." The only thing the "criminal attempt" definition would add is the requirement of a substantial step. An optimal instruction under the pertinent second-degree assault provision would state that an attempt requires some substantial step, or some overt act beyond mere preparation, *see People v. Marlott*, 191 Colo. 304, 552 P.2d 491 (1976), but here, where a shot was actually fired and the element of attempt was never contested at trial, the error, if any, was not plain error. *See, e.g., People v. Pearson*, 190 Colo. 313, 546 P.2d 1259 (1976) (where premeditation was not at issue in the trial, failure to instruct properly on premeditation was not reversible error). The uncontroverted evidence established a substantial step; therefore, there is not a reasonable possibility that the alleged error in the instruction contributed to the defendant's conviction.

### III.

■ The defendant contends that his right to equal protection was violated because the second-degree assault provision under which he was convicted proscribes the same conduct forbidden by the criminal attempt statute, section 18–2–101(1), C.R.S., but carries a greater penalty. Second-degree assault is a class 4 felony, while a conviction under the criminal attempt statute would have been a class 5 felony.

■ Equal protection requires that statutory classifications of crimes be based on differences that are real in fact and are reasonably related to the purposes of the legislation. *People v. Owens*, 670 P.2d 1233 (Colo.1983); *People v. Marcy*, 628 P.2d 69 (Colo.1981); *People v. Calvaresi*, 188 Colo. 277, 534 P.2d 316 (1975). "Subjecting a defendant to a more severe sanction for criminal conduct identical to that proscribed by another statute is a violation of equal protection." *People v. Owens*, 670 P.2d at 1237.

■ The defendant was convicted under section 18–3–203(1)(b), C.R.S. which provides:

A person commits the crime of assault in the second degree if: ... With intent to cause bodily injury to another person, he causes or attempts to cause such injury to any person by means of a deadly weapon.

Section 18–2–101 is the general criminal attempt statute. There is no violation of equal protection in this case because the defendant's conduct is not specifically proscribed by section 18–2–101. The relevant statutes indicate the intent of the General Assembly to punish an attempt to cause bodily injury by means of a deadly weapon in a special manner. Section 18–3–203(1)(b) is a statutory exception to attempts charged under section 18–2–101(1). A primary rule of statutory construction is that a specific statute prevails over general legislation. *People v. Luciano*, 662 P.2d 480 (Colo.1983); *Walker v. Dist. Ct.*, 199 Colo. 128, 606 P.2d 70 (1980). It is clearly within

---

**3.** Section 18–3–203(1)(b) provides: "A person commits the crime of assault in the second degree if: ... With intent to cause bodily injury to another person, he causes or attempts to cause such injury to any person by means of a deadly weapon."

the legislative prerogative to punish attempted assault with a deadly weapon more severely than an attempt to cause serious bodily injury without a deadly weapon, for example. (*See* section 18–3–203(1)(a), C.R.S. which does not include the word "attempts" in its description of second-degree assault.) Therefore, the defendant's conviction did not violate his right to equal protection.

## IV.

The defendant's final argument is that the district court erred in denying his motion to suppress witness identifications of him. He asserts that the one-on-one identification made by Jack Kassell and the photographic lineup shown to Kassell and the victim Fleming were impermissibly suggestive, and therefore, any testimony about the out-of-court identifications and any in-court identifications should have been suppressed.

■■■■■ The first step in our analysis is to determine whether the pretrial identification procedures were impermissibly suggestive. Pretrial identification procedures which, given the totality of the circumstances, are so unnecessarily suggestive as to render the identification unreliable violate due process. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *People v. Mattas*, 645 P.2d 254 (Colo.1982); *People v. Mack*, 638 P.2d 257 (Colo.1981). The first identification was made by Kassell in a one-on-one showup at the scene of the shooting. One-on-one showups are not favored and tend to be suggestive, but are not per se violations of due process. *People v. Mascarenas*, 666 P.2d 101 (Colo.1983); *People v. Walker*, 666 P.2d 113 (Colo.1983); *People v. Smith*, 620 P.2d 232 (Colo.1980); *People v. Williams*, 183 Colo. 241, 516 P.2d 114 (1973). The test applied to determine the validity of a one-on-one showup is whether the procedure was likely to result in an unreliable identification, based upon the totality of the circumstances. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140; *People v. Mattas*, 645 P.2d

254; *People v. Mack*, 638 P.2d 257. Factors to consider in resolving this question are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and confrontation. *Manson v. Brathwaite*, 432 U.S. at 114, 97 S.Ct. at 2253; *People v. Mascarenas*, 666 P.2d at 109; *People v. Walker*, 666 P.2d at 119; *People v. Smith*, 620 P.2d at 238.

■■■ Kassell testified that he saw the defendant inside the 7–11, and that he got a good look at the defendant's face from about five feet when the defendant reached into the car and took the bag of marijuana. There is no indication in the record that the witness was not attentive. Kassell also testified that he was certain at the one-on-one showup that the defendant was the party Fleming had been chasing. Kassell made no prior description of the defendant, but at the showup he noted that the defendant was wearing his shirt pulled back behind his head, and that he had not worn his shirt in that fashion earlier at the 7–11. In addition, only forty-five minutes had elapsed between the shooting and the showup. We conclude, based upon the totality of the circumstances, that the one-on-one showup did not deny the defendant due process of law.

■■■■ The second pretrial identification procedure used was a photographic lineup. The defendant argues that the photographic lineup was suggestive on its face. Our review of the lineup convinces us that it was not impermissibly suggestive. We also note the indicia of reliability as to Fleming's identification of the defendant. Fleming testified that he caught a brief glance of the defendant at the 7–11. He also testified that just before he was shot, he exchanged words with the defendant from a distance of ten to fifteen feet, and that he got a good look at the defendant's face because the exchange occurred under a streetlight. Shortly after the shooting, Fleming provided a reasonably

accurate description of the defendant. At the suppression hearing and again at trial, Fleming exhibited great certainty in his identifications. Because the pretrial procedures were not impermissibly suggestive, the district court appropriately allowed in-court identifications of the defendant.

Most of the defendant's specific objections go to the weight of the identification evidence, and not its admissibility. Therefore, we hold that there was no error in the district court's refusal to exclude the out-of-court and in-court identifications made by Fleming and Kassell.

Judgment affirmed.