**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Richard DeHERRERA, Defendant-Appellant.**

**No. 83SA309.**

Supreme Court of Colorado, En Banc.

March 25, 1985.

---

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Milton Hutchins, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Jody Sorenson Theis and Seth J. Benezra, Deputy State Public Defenders, for defendant-appellant.

QUINN, Justice.

The defendant, Richard DeHerrera, appeals his convictions for assault in the second degree, driving under the influence, and leaving the scene of an accident. He challenges the constitutionality of the second degree assault statute and raises other claims relating to jury instructions and prosecutorial comments during summation. We affirm the defendant's convictions.[1]

## I.

The defendant was charged in a multi-count information with the following offenses arising out of an episode which occurred on the evening of July 20, 1981, in Las Animas County, Colorado: four counts of assault in the second degree, based on the defendant's conduct in attempting to cause bodily injury to Robert Pearson, Carl Veltri, Ricardo Gonzales, and Robert Mooney;[2] one count of criminal mischief involving damage to personal property of the city of Aguilar;[3] one count of driving under the influence of intoxicating liquor;[4] and two counts of leaving the scene of an accident.[5]

The evidence at trial established the following sequence of events. On July 20, 1981, at approximately 7:00 p.m. the defendant knocked on the door of Vernon Borrego's home in Gulnare, Colorado, which is located a few miles southwest of the town of Aguilar. Borrego feared the defendant and immediately called the town marshal in Aguilar. When deputy marshals Mooney and Gonzales arrived at Borrego's home, they observed the defendant and Borrego facing each other. After exchanging a few words with Borrego, the defendant drove away in his car. Borrego at this time told the officers that he wanted to sign a complaint for harassment.

The officers drove after the defendant, but as they signaled him to stop he accelerated his car and drove away. Approximately twenty-five minutes later the officers observed the defendant's car, which was unoccupied, parked on a street in Agui-

---

1. Because the defendant has challenged the constitutionality of a statute, appellate jurisdiction is properly in this court. §§ 13–4–102(1)(b) and 13–4–110(1)(a), 6 C.R.S. (1973).

2. § 18–3–203(1)(b), 8 C.R.S. (1978).

3. § 18–4–501, 8 C.R.S. (1978).

4. § 42–4–1202(1)(a), 17 C.R.S. (1984).

5. § 42–4–1402, 17 C.R.S. (1984).

lar. Somewhat later in the evening, while driving on Balsam Street in Aguilar, the officers observed the defendant's car accelerating directly toward them in their lane of traffic. Officer Gonzales, who was driving the police vehicle, attempted to swerve to the side of the road, but the defendant's car struck the police vehicle and sped away. Neither Gonzales nor Mooney was injured in the collision.

A few minutes later Deputy Sheriffs Veltri and Pearson, who were assisting the Aguilar marshals in attempting to find the defendant, saw the defendant's car traveling east on Linden Street in Aguilar toward their vehicle. The deputy sheriffs turned on their emergency lights and siren and drove slowly towards the defendant's car. The defendant at this time accelerated and drove directly toward their vehicle. As Pearson attempted to drive off the highway, the defendant drove his car into the driver's side of the sheriffs' vehicle and then drove away. Both Pearson and Veltri suffered back injuries in the accident.

The defendant's car was later found parked on Linden Street in Aguilar and the defendant, upon returning to the car, was arrested and taken to the Trinidad police station, where a state patrolman administered a field sobriety test and a chemical test of the defendant's breath. The defendant was initially hostile and uncooperative. As the patrolman was explaining the testing procedures, the defendant appeared confused and, according to the officer, "[h]is conversation was rambling." The defendant's attitude shortly changed, however, and in the officer's words, the defendant "felt sad, felt shaken over the circumstances." During the field test the defendant swayed to both sides and was unable to recite the alphabet or to perform other coordinative movements. The chemical test of the defendant's breath yielded a reading of .10 blood-alcohol content.

The defendant testified at trial on his own behalf. Centering his defense on lack of specific intent to injure the officers due to his intoxication, the defendant admitted that he drove his car into the police vehi-cles. On direct examination the defendant gave testimony that occasioned later comment by the prosecuting attorney in summation. He testified that when he saw his father after the events in question, he told him that he had spent the evening of July 20 at home and that someone had stolen his car.

At the conclusion of the evidence the trial court instructed the jury that the elements of assault in the second degree consisted of the following: (1) with specific intent to cause bodily injury to another person, (2) attempting to cause such injury to any person, (3) by means of a deadly weapon. The court also instructed the jury that a criminal attempt consisted of acting with the specific intent required for the crime of assault in the second degree and of intentionally engaging in conduct constituting a substantial step towards the commission of that crime. Although no verdict form for criminal attempt was submitted to the jury, the instruction on criminal attempt concluded with the following statement, to which the defendant objected:

> If, after considering all the evidence, you find that the prosecution has established beyond a reasonable doubt that the defendant[,] Richard DeHerrera, without affirmative defense, acted in such a manner so as to satisfy all of the above elements at or about the date and place stated in the Information, you should find the defendant guilty of criminal attempt[;] if you do not so find, you should find the defendant not guilty of criminal attempt.

The court also instructed the jury that it was an affirmative defense to the crime of assault in the second degree that the defendant, by reason of intoxication, did not have the capacity to form the specific intent required for that offense. In connection with the two counts of second degree assault involving the two injured officers, Pearson and Veltri, the court instructed the jury and submitted verdicts on the lesser offense of third degree assault by knowingly or recklessly causing bodily injury to

another person.[6] The court's instructions defined "knowingly" and "recklessly" as follows:

A person acts "knowingly" with respect to conduct or to a circumstance described by a statute defining an offense when he is aware, or *reasonably should be aware*, that his conduct is of that nature or that the circumstance exists.

A person acts "recklessly" with respect to a result or to a circumstance described by a statute defining an offense when he is aware or *reasonably should be aware* of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists.

(emphasis added). The court also instructed the jury that the offense of driving under the influence included the elements of (1) driving any vehicle, (2) in this state, (3) while under the influence of intoxicating liquor, (4) by the knowing consumption of alcohol. The elements of the offense of leaving the scene of an accident were listed as (1) being the driver of any vehicle, (2) knowing that it is directly involved in an accident, (3) resulting in damage to a vehicle driven or attended by any person, and (4) failing to immediately stop such vehicle at the scene of the accident or failing to return forthwith and remain at the scene.

After the jury was instructed, the prosecuting attorney and defense counsel delivered their summations. The prosecuting attorney, over the objection of the defendant, commented to the jury that "until today the Defendant had never admitted driving the car on the day in question." The prosecution also remarked, again over the defendant's objection, that he hoped none of the jurors "ever get put in the position of Officers Mooney or Gonzales of having someone [drive] at you with their car at a high rate of speed." The summation of defense counsel consisted of an outright admission that the defendant was guilty of driving under the influence and leaving the scene of two accidents, but that he was not guilty of assault in the second degree because he lacked the specific intent to cause bodily injury by reason of his intoxication. In rebuttal to defense counsel's argument, the prosecuting attorney argued:

What I understand [the defendant] to say is that simply because he was intoxicated it was impossible for him to formulate that necessary intent to cause bodily injury. What this means, Ladies and Gentlemen, is that it's okay for anybody to get all liquored up, get real drunk, get behind the wheel of a car and just drive around and start smashing into cars....

Defense counsel's objection to this statement was overruled, and his motion for a mistrial was denied.

The jury found the defendant guilty of the two counts of assault in the second degree based on the second collision with the police vehicle occupied by Deputy Sheriffs Pearson and Veltri, and not guilty of the two counts of assault in the second degree involving the first collision with the police vehicle occupied by Officers Gonzales and Mooney. The jury also found the defendant guilty of criminal mischief,[7] driving under the influence, and two counts of leaving the scene of an accident. The defendant was sentenced to concurrent terms of two years for the two second degree assault convictions, twelve months for criminal mischief, twelve months for driving under the influence, and six months for

---

6. § 18–3–204, 8 C.R.S. (1978).

7. The crime of criminal mischief, as of July 20, 1981, required that a person "knowingly" damage the real or personal property of another in the course of a single criminal episode. § 18–4–501, 8 C.R.S. (1978). The trial court, however, instructed the jury that criminal mischief required the culpable mental state of "intentionally." The jury found the defendant guilty of criminal mischief and further found that the aggregate damage to the property was more than fifty dollars but less than two hundred dollars, thus resulting in a class 2 misdemeanor under the statutory scheme then in effect. Ch. 212, sec. 12, § 18–4–501, 1981 Colo.Sess.Laws, 972, 975. The defendant has not appealed any aspect of that conviction.

the two convictions for leaving the scene of an accident.[8]

The defendant on this appeal raises the following arguments for reversal: the statutory proscription of assault in the second degree, a class 4 felony, violates equal protection of the laws because the statutory definition of that crime is indistinguishable from what the defendant characterizes as the less serious felony of criminal attempt to commit second degree assault; the trial court erred in giving an instruction on criminal attempt because the jury was not asked to consider or deliberate on that charge; the trial court erred in its definitional instructions on the culpable mental states of "knowingly" and "recklessly"; and the prosecuting attorney improperly commented in summation on the defendant's exercise of his right to remain silent after arrest and also improperly appealed to the sympathy and prejudice of the jury. We will consider these arguments in turn.

## II.

The defendant argues that his convictions for second degree assault violate equal protection of the laws because the conduct proscribed by second degree assault, a class 4 felony punishable by a presumptive sentence of two to four years, is identical to the conduct punishable by the general criminal attempt statute, which if applied to second degree assault would be a class 5 felony carrying a presumptive sentence of one to two years. We find no merit in the defendant's argument.

Section 18–2–101(1), 8 C.R.S. (1978), contains the following definition of criminal attempt:

A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission

of the offense. A substantial step is any conduct, whether act, omission, or possession, which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

In contrast to this general definition of criminal attempt, section 18–3–203(1)(b), 8 C.R.S. (1978), specifically defines assault in the second degree as follows:

A person commits the crime of assault in the second degree if: ... With intent to cause bodily injury to another person, he causes or attempts to cause such injury to any person by means of a deadly weapon....

We recognize that the right to equal protection of the laws is violated if an accused is subjected to a more severe sanction for criminal conduct identical to that punished less severely by another statute. *E.g., People v. Owens,* 670 P.2d 1233 (Colo.1983); *People v. Marcy,* 628 P.2d 69 (Colo.1981); *People v. Calvaresi,* 188 Colo. 277, 534 P.2d 316 (1975). There is no violation of equal protection here, however, because, as we expressly held in *People v. Weller,* 679 P.2d 1077 (Colo.1984), an attempt to cause bodily injury by means of a deadly weapon is punishable only under the second degree assault statute rather than the general criminal attempt statute. In rejecting the identical equal protection argument raised in this case, we stated in *Weller:*

The relevant statutes indicate the intent of the General Assembly to punish an attempt to cause bodily injury by means of a deadly weapon in a special manner. Section 18–3–203(1)(b) is a statutory exception to attempts charged under section 18–2–101(1). A primary rule of statutory construction is that a special statute prevails over general legislation. [citations omitted] It is clearly within the

---

**8.** Leaving the scene of an accident is a class 2 traffic offense punishable by a minimum sentence of ten days imprisonment, or $10 fine, or both, and a maximum sentence of ninety days imprisonment, or $300 fine, or both. §§ 42–4–1402, 42–4–1501(2)(a)(II), 17 C.R.S. (1984). Although the court's sentence merely recites a six

month sentence for leaving the scene of an accident, the court apparently imposed the maximum ninety day sentence on each count and made these sentences consecutive to each other but concurrent with all other sentences imposed.

legislative prerogative to punish attempted assault with a deadly weapon more severely than an attempt to cause serious bodily injury without a deadly weapon, for example. (*See* section 18–3–203(1)(a), C.R.S. which does not include the word "attempts" in its description of second-degree assault.) Therefore, the defendant's conviction did not violate his right to equal protection.

679 P.2d 1082–83. There is no reason to depart from our recent holding in *Weller*, and we reaffirm it at this time.

### III.

The defendant next challenges the trial court's instruction on criminal attempt. He argues that, because he was not charged with criminal attempt and a verdict on such offense was not submitted to the jury, the court's instruction was unduly confusing and constituted reversible error. Although we conclude that the last paragraph of the attempt instruction should not have been given, we find no reversible error under the circumstances of this case.

■ Since one of the elements of the second degree assault charges was an attempt to cause bodily injury to another person, it was certainly proper for the court to give some instruction to the jury on the meaning of the term "attempt" in the context of assault in the second degree. Indeed, we stated in *Weller* that "[a]n optimal instruction under the pertinent second-degree assault provision would state that an attempt requires some substantial step, or some overt act beyond mere preparation." 679 P.2d at 1082. The trial court in the instant case went beyond the recommended instruction in *Weller* and told the jury that the attempt element requires not only the substantial step toward the commission of assault in the second degree but also acting with the specific intent essential to a conviction for assault in the second degree. Since the definitional aspect of the challenged instruction was substantially more detailed than the instruction recommended in *Weller*, the defendant could not

possibly have been prejudiced by this part of the instruction.

■ The trial court, however, should not have given the concluding paragraph of the attempt instruction, which charged the jury as if the crime of criminal attempt were being submitted to them for their consideration. Although the defendant's objection to this part of the instruction is well taken, we are satisfied that the error in the challenged instruction did not affect the substantial rights of the defendant. Crim.P. 52(a). Jury instructions must be considered as a whole in determining whether a particular instruction was so misleading as to constitute reversible error. *E.g., Ramirez v. People,* 682 P.2d 1181 (Colo.1984); *Chambers v. People,* 682 P.2d 1173 (Colo. 1984); *People v. Mattas,* 645 P.2d 254 (Colo.1982). In this case the jury was clearly informed that the charges submitted to them for their consideration were assault in the second degree, the lesser offense of assault in the third degree, criminal mischief, driving under the influence, and leaving the scene of an accident. The verdicts submitted to the jury consisted of these offenses only, with no verdict whatever being submitted on the crime of criminal attempt as such. Furthermore, the definitional instruction on criminal attempt immediately preceded the elemental instruction on second degree assault. In view of this sequence, the jury would obviously have considered the definitional instruction only in the context of determining whether the attempt element of second degree assault had been established beyond a reasonable doubt. Under these circumstances, there is no reasonable possibility that the erroneous portion of the definitional instruction on criminal attempt misled the jury and improperly contributed to the defendant's convictions, and the error must accordingly be deemed harmless.

### IV.

■ The defendant next contends that the trial court erred in defining the culpable mental state of "knowingly" and "recklessly" to include conduct or circumstances

of which the defendant reasonably should have been aware. Sections 18–1–501(6) and (8), 8 C.R.S. (1978), in contrast to the definitional instructions given by the court, define "knowingly" and "recklessly" as follows:

A person acts "knowingly" ... with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists....

A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that a result will occur or that a circumstance exists.

Although it is undisputed that inclusion of the phrase "reasonably should be aware" erroneously incorporated a reasonable care standard into the culpable mental states of "knowingly" and "recklessly," *e.g., People v. Freeman*, 668 P.2d 1371 (Colo.1983); *People v. Quick*, 190 Colo. 171, 544 P.2d 629 (1976), while in contrast the respective statutory definitions require an awareness for "knowingly" and a conscious disregard for "recklessly," we are satisfied that the error in these definitional instructions did not cause any prejudice to the defendant.

A.

■ Because the elemental instruction on assault in the second degree expressly included the culpable mental state of acting with specific intent to cause bodily injury to another, *see* § 18–3–203(1)(b), 8 C.R.S. (1978), and because the trial court correctly told the jury in another instruction that a person acts with specific intent when his conscious objective is to cause the specific result proscribed by the statute defining the offense, *see* § 18–1–501(5), 8 C.R.S. (1978), we need not concern ourselves with the effect of the challenged instructions on the guilty verdicts to two counts of second degree assault. Furthermore, it is obvious that the challenged instructions could not have affected the jury's deliberations on the lesser included offenses of assault in the third degree, which were submitted to the jury only in connection with the second degree assault charges involving Robert Pearson and Carl Veltri. The jury's decision to return guilty verdicts on the two greater inclusive offenses of assault in the second degree, which required the more serious culpable mental state of specific intent to cause bodily injury, necessarily obviated the possibility of any prejudice in connection with the flawed definitions of the culpable mental state applicable to third degree assault. The only offenses to which the "should have been aware" language contained in the definitional instruction of "knowingly" could relate were the offenses of driving under the influence and leaving the scene of an accident.

B.

■ The trial court instructed the jury that one of the elements of driving under the influence was the "knowing consumption of alcohol," and also instructed the jury that the crime of leaving the scene of an accident required the element of "knowing that [the vehicle] is directly involved in an accident." In contrast to these elemental instructions given by the court, no culpable mental state is expressly designated in the statutory offenses of driving under the influence and leaving the scene of an accident. Section 42–4–1202(1)(a), 17 C.R.S. (1984), makes it a misdemeanor "for any person who is under the influence of intoxicating liquor to drive any vehicle in this state." Section 42–4–1402, 17 C.R.S. (1984), makes it a class 2 traffic offense for a driver directly involved in an accident resulting in damage to another vehicle to leave the scene of the accident without giving his name, address, and registration number of his vehicle to the driver or occupant of the other vehicle. Both of these offenses are strict liability offenses. *See* § 18–1–502, 8 C.R.S. (1978). As we noted in *People v. Rostad*, 669 P.2d 126, 129 (Colo.1983), the minimum requirement for a strict liability offense in Colorado is the performance of a "voluntary act"—that is, "an act performed consciously as a result of effort or determination."

Even with the erroneous "should have been aware" language in the definitional

instruction on "knowingly," the effect of this language was to impose upon the prosecution no less a burden than otherwise required for a voluntary act. The elemental instruction on driving under the influence required the prosecution to prove that the defendant was unreasonably heedless of the effect of consuming alcohol and thereafter drove a motor vehicle while under the influence of intoxicating liquor. In similar fashion, the elemental instruction on leaving the scene of an accident required the prosecution to prove that the defendant, while driving his automobile, was unreasonably heedless that his vehicle was involved in an accident that damaged another vehicle and failed to remain at the accident scene. The culpability elements outlined in these instructions required, at a minimum, proof of the same type of "conscious mental activity involving effort or determination" that is an essential ingredient of a strict liability offense. *Rostad*, 669 P.2d at 129.[9]

### V.

We turn to the defendant's claims that the prosecutor in closing argument (1) improperly commented on the defendant's exercise of his constitutional right to post-arrest silence in violation of the privilege against self-incrimination, U.S. Const. amends. V and XIV; Colo. Const. art. II, sec. 18, and (2) improperly appealed to sympathy and prejudice by expressing hope that the jurors would not become involved in a similar accident and by later characterizing defense counsel's argument on lack of specific intent as a condonation of drunk driving.

### A.

The propriety of the prosecutor's reference to the defendant's belated admission at trial to having driven the car involved in the two collisions must be evaluated in the context of the defendant's testimony. The defendant admitted on direct examination to having driven his car into the police vehicles while intoxicated and then stated, in response to questioning by his attorney, that he later lied to his father by telling him that he had been at home since 9:00 in the evening and that his car had been stolen. It was in the context of this testimony that the prosecutor made the challenged statement about the defendant's admission at trial to driving the vehicle involved in the two collisions.

The prosecution's statement reasonably appears to be a passing allusion to the defendant's testimony on direct examination and not a reference to the defendant's refusal to make any statement after his arrest. There was no evidence presented during the trial, nor was any mention made by anyone, of the defendant's invocation of his privilege against self-incrimination after his arrest. Indeed, other than the defendant's own testimony on direct examination concerning his statement to his father, the only evidence concerning any statement by the defendant was the testimony of the state patrolman who administered the field sobriety and breath test to the defendant at the Trinidad police station. This officer testified, without objection, that the defendant appeared confused, his conversation was rambling, and he later appeared sad and shaken over the episode. We fail to see under these circumstances how the jurors could possibly have interpreted the prosecutor's remark as a comment on any invocation by the defendant of his right not to make any statement after his arrest. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The prosecutor's remark, not being reasonably

---

9. Defense counsel conceded as much in his summation to the jury, when he stated:

> All we are interested in at the moment [are] the second degree assault charges. Richard was drunk, he was driving, he was incapable of driving safely and, therefore, he is guilty of driving under the influence. He left the scene of two accidents. He damaged one of the vehicles ... and we are not concerned about that. All that it boils down to is whether or not, one, he intended with specific intent the conscious object to cause the result, that is to cause the bodily injury that occurred; that he did attempt or try to cause the bodily injury that occurred, and that he did so with a deadly weapon.

calculated to direct the jury's attention to the defendant's invocation of post-arrest silence, did not violate the defendant's privilege against self-incrimination. *See, e.g., People v. Todd,* 189 Colo. 117, 538 P.2d 433 (1975).

### B.

 Nor did the prosecutor's other remarks constitute such an appeal to sympathy or prejudice as to require a new trial. We note that while the line between permissible and impermissible argument may be somewhat thin and occasionally obscure, the controlling principle is not. Final argument must be confined to the evidence admitted at trial, the inferences that can reasonably and fairly be drawn therefrom, and the instructions of law submitted to the jury. *E.g., People v. Lundy,* 188 Colo. 194, 533 P.2d 920 (1975); *see also ABA Standards For Criminal Justice, The Prosecution Function,* Standard 3–5.8 (1979); Crim.P. 30. Prosecutors who deviate from this principle jeopardize the validity of any ensuing conviction.

 The prosecutor's statement to the jury that he hoped "none of you ever get put in the position of Officers Mooney or Gonzales of having someone [drive] at you with their cars at a high rate of speed" was improper, in that it was an oblique appeal to the jury's sympathy for the victims of the defendant's conduct. As such, the trial court should have sustained the defendant's objection to the remark and directed the jury to disregard it. The remark, however, was a minute part of the prosecutor's summation and, by itself, was not such a flagrant appeal to sympathy as to warrant a new trial.

 For similar reasons, we find no reversible error in the prosecutor's statement on rebuttal that defense counsel's summation was, in essence, a condonation of drunk driving. The prosecutor's remarks were directed to defense counsel's argument that, when the defendant drove his car into the police vehicles, he lacked the specific intent to cause bodily injury due to his self-induced intoxication. Although the prosecutor's statement might be viewed as telling the jury to ignore the evidence and the law on specific intent and to focus instead on the effect of an acquittal on drunk driving in the community, *see ABA Standards for Criminal Justice, The Prosecution Function,* Standard 3–5.8(d) and Commentary (1979), we cannot say that it is so inflammatory as to require a new trial. *See, e.g., People v. Mason,* 643 P.2d 745 (Colo.1982).

We do not commend the prosecutor's summation in this case as a model to be followed in the future. We merely hold that the improprieties present here, when considered both singularly and cumulatively, neither affected the substantial rights of the defendant nor deprived the defendant of a fair trial.

The judgment is affirmed.