The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Byron Terrell YOUNG, Defendant–
Appellant.

No. 94CA1014.

Colorado Court of Appeals,
Div. IV.

Nov. 9, 1995.

Rehearing Denied Dec. 14, 1995.

Certiorari Denied Sept. 3, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, John J. Krause, Assistant Attorney General, Denver, for Plaintiff–Appellee.

Donald R. Knight, Littleton, for Defendant–Appellant.

Opinion by Judge KAPELKE.

Defendant, Byron Terrell Young, appeals from the judgment of conviction entered upon jury verdicts finding him guilty of aggravated robbery and two habitual criminal counts. He also appeals his sentence. We affirm.

On the evening of August 28, 1991, a man with a gun approached the victim in a store parking lot and demanded her purse. After taking the purse, the robber left the parking lot on foot.

Later that evening, a police officer drove the victim to the apartment complex where she and another witness to the robbery observed the defendant and identified him as the robber. Defendant had been detained by the police after someone had reported having opened a gate for a man who was carrying a gun and a white purse. Defendant and a woman companion were stopped upon leaving the apartment that had purportedly been entered by the man with the purse and gun.

Following his identification by the victim and another eyewitness, defendant was arrested. The next day, defendant's parole officer and a detective conducted a search of defendant's apartment and seized a gun, a purse, and some money and clothing.

Some time after his arrest, defendant fled the state. He was later arrested in Oklahoma and brought back to Colorado pursuant to the Interstate Agreement on Detainers Act (IAD). The convictions here at issue followed.

I.

Defendant contends that the trial court erred in failing to dismiss the first habitual criminal count against him because the information, some of the trial testimony, the jury instructions, and the verdict form all referred to the wrong case number with respect to a prior felony conviction of defendant. We perceive no error.

The information charged that defendant had previously been convicted of felony theft in case number 88 CR *1151.* This erroneous docket number was mentioned by the prosecutor in his opening statement and appeared in the jury instructions. In addition, a witness from the district attorney's office testified that evidence of defendant's previous conviction was contained in file number 88 CR *5111.* The actual judgment of conviction, however, which was admitted into evidence, revealed that the correct docket number for the prior conviction was 88 CR *1511.*

During deliberations, the jury noticed the discrepancy in the case numbers and brought it to the court's attention by sending a note. At that time, counsel for defendant made a motion to dismiss the first habitual criminal count. The trial court denied the motion.

Defense counsel then requested that the jurors be told that they must follow the instructions they had already been given, and the court agreed to give such an instruction. Despite their expressed reservations about signing a verdict form containing the wrong case number, the jurors returned a guilty verdict. At defendant's sentencing, his coun-

sel renewed, and the court again denied, the motion to dismiss.

The habitual criminal statute requires that the prosecutor, in the habitual criminal phase of a trial, prove beyond a reasonable doubt that "the defendant has been previously convicted as alleged." Section 16–13–103(4)(b), C.R.S. (1986 Repl.Vol. 8A).

■ Here, the defects in the information and the verdict form appear to have been the result of a clerical error and constitute defects of form rather than substance. Technical defects in the form of the information do not require reversal unless the substantial rights of the defendant are prejudiced. *People v. Hunter,* 666 P.2d 570 (Colo.1983).

Defendant has neither alleged nor demonstrated that he was prejudiced by the discrepancy in the file numbers. The record reveals that defendant was placed on notice as to the specific criminal convictions alleged to form the predicate of the habitual criminal charges.

■ In the habitual criminal phase of trial, the prosecution has the burden of proving the prior conviction and the identity of the accused. *O'Day v. People,* 114 Colo. 373, 166 P.2d 789 (1946).

■ Here, based on the evidence presented, the jury could have found beyond a reasonable doubt that the defendant was the person who was previously convicted of felony theft in case number 88 CR 1511. Supporting evidence included not only a certified copy of the judgment of conviction itself, but also official photographic and fingerprint documents verifying that the defendant was the individual convicted in that case.

We therefore conclude that the trial court properly denied defendant's motion to dismiss the first habitual criminal count.

## II.

Defendant next contends that the trial court erred in denying his motion to dismiss both habitual criminal counts because of inaccuracies in the dates of the convictions as alleged in the information. We disagree with this contention.

Both habitual criminal counts in the information allege that defendant was sentenced for the prior convictions on January 31, 1989. However, the evidence, including the judgments of conviction themselves, established that defendant was actually sentenced on October 13, 1988. January 31, 1989, was the date of defendant's resentencing and transfer to the Department of Corrections from Community Corrections.

The defense filed a motion to dismiss both habitual criminal counts based on the evidence that the sentences were imposed on a date different from that alleged in the information. The trial court denied the motion.

With respect to habitual criminal counts, the statute requires that the indictment or information allege "that the defendant on a date and at a place specified was convicted of a specific felony." Section 16–13–103(2), C.R.S. (1986 Repl.Vol. 8A).

■ A variance between the specific date of the offense as alleged and the date as proven at trial is not fatal, absent a showing that the defendant was impaired in his defense to the charge at trial or in his ability to plead the judgment as a bar to a subsequent proceeding. *People v. Adler,* 629 P.2d 569 (Colo.1981). Defendant has made no such showing here.

Defendant urges that the requirement of showing prejudice as a result of a defect in dates in the information should not apply when the defect involves habitual criminal charges because § 16–13–103(2) requires that the charging document specify the date of conviction. Under the circumstances here, we disagree.

An analogous argument regarding the habitual criminal statute was addressed by a division of this court in *People v. Wieghard,* 709 P.2d 81 (Colo.App.1985). There, the defendant contended that the habitual criminal charges should have been dismissed because § 16–13–103(2) required an allegation in the information that each conviction was for an offense that would be a felony if committed in Colorado, and the information charging defendant did not contain such an allegation. Although conceding that the information did not comply with the statute, the *Wieghard*

court rejected defendant's contention on the grounds that the defect was not prejudicial to the defendant.

We likewise conclude that, absent a showing of prejudice to defendant, an inaccuracy or discrepancy in the date of prior conviction alleged in the information does not mandate a dismissal of the habitual criminal counts.

■ For a defendant to be classified as a habitual criminal under § 16–13–101(1), C.R.S. (1986 Repl.Vol. 8A), he or she must have been twice convicted of felonies within ten years of the date of commission of his or her most recent offense. Here, because both the October 1988 and January 1989 dates were within ten years of the commission of the substantive offense for which defendant was being tried, and because a reasonable jury could have found that defendant's identity was established beyond a reasonable doubt as to the prior convictions, the mistake did not affect the substantial rights of the defendant.

Finally, defendant does not urge or demonstrate that he had failed to receive notice or was unaware of the actual convictions alleged to serve as the predicate of the habitual criminal charges. Nor has he shown that his defense was impaired by reason of the date discrepancy.

We therefore find no reversible error in the trial court's refusal to dismiss the habitual criminal counts.

### III.

Defendant also maintains that the trial court erred in failing to grant him a hearing on his claim of ineffective assistance of counsel in connection with the convictions supporting the habitual criminal counts. We perceive no error.

On January 31, 1992, counsel for the defendant filed a motion to dismiss the habitual criminal counts. The trial court initially ruled that the motion was time-barred because more than three years had passed since the date of the convictions defendant was collaterally attacking. Subsequent proceedings, however, resulted in the court finding that the motion was timely filed.

The court then dismissed the habitual criminal counts upon a finding that defendant had not been properly advised of his rights at the time he had entered his pleas in those cases. Upon the prosecution's challenge to that ruling, in *People v. District Court,* 868 P.2d 400 (Colo.1994), the supreme court held that defendant's advisement was adequate and ordered the trial court to reinstate the habitual criminal counts. The supreme court did not rule on the issue of whether defendant's collateral attack on his prior convictions was time-barred.

Defendant argues that the supreme court's failure to determine whether his collateral attack was time-barred left intact the trial court's ruling that the motion to dismiss was timely filed. Therefore, defendant contends, he was entitled to a full hearing on the merits of his claim asserted in that motion of ineffective assistance of counsel with respect to the convictions underlying the habitual criminal counts. He urges that the trial court erred in not affording such a hearing and that, as a result, he was denied his constitutional right to attack his prior felony convictions.

■ However, defendant made no request in the trial court for a hearing on his ineffective assistance of counsel claim, either before or after the remand. Therefore, we find no error in the court's failure to hold such a hearing on its own motion. Moreover, because he failed to request a ruling on this issue, defendant has waived it on appeal. *See Feldstein v. People,* 159 Colo. 107, 410 P.2d 188 (1966).

### IV.

■ Defendant next asserts that the trial court erred in denying his motions to suppress certain physical evidence, statements he made following his arrest, and evidence of identification derived from a show-up. We disagree.

Initially, we note that we must defer to a trial court's ruling on a motion to suppress if it is adequately supported by competent evidence in the record. *People v. Jordan,* 891 P.2d 1010 (Colo.1995).

## A.

First, we reject defendant's contention that the trial court erred in denying his motions to suppress physical evidence seized and statements made by him following his arrest.

While defendant concedes that the police officer was justified in making an investigatory stop, defendant argues that the officer exceeded the permissible bounds of this stop and actually placed defendant in custody before probable cause had been established. Therefore, defendant maintains, his arrest was illegal and all evidence gathered as a result of the arrest must be suppressed, including the statements he made before he was given his *Miranda* warnings and physical evidence taken from him and from his apartment.

■■ Although an investigatory stop is a seizure for purposes of the Fourth Amendment, this does not necessarily mean that a suspect is "in custody" for purposes of the *Miranda* doctrine. In determining whether a defendant has been placed in custody, the relevant inquiry is whether a reasonable person in the defendant's position would consider himself or herself deprived of freedom of action in a significant way. *People v. Breidenbach*, 875 P.2d 879 (Colo.1994).

■ The determination of whether a suspect was in custody at the time of questioning is a question of fact to be resolved by the trial court and will not be disturbed on appeal if the correct legal standard was applied and the finding is supported by competent evidence in the record. *People v. Breidenbach, supra.*

Under § 16–3–103, C.R.S. (1986 Repl.Vol. 8A):

A peace officer may stop any person who he reasonably suspects is committing, has committed, or is about to commit a crime and may require him to give his name and address, identification if available, and an explanation of his actions. The stopping shall not constitute an arrest.

A police officer who makes such a stop is also permitted to pat down a suspect as part of a weapons check when the officer reasonably believes that it is necessary for his or her personal safety. Section 16–3–103(2), C.R.S. (1986 Repl.Vol. 8A).

Here, the trial court found that defendant was detained as part of a proper investigatory stop and was not placed in custody until after he was identified by the victim, at which time probable cause for his arrest existed. In addition, the court found, with record support, that defendant was not in custody at the time he made the statements which are the subject of his suppression motion. Therefore, the police were not required to give him his *Miranda* warnings.

■ The trial court's findings are supported by the testimony of the officer who first questioned the defendant. The officer testified that, after stopping defendant, he conducted a pat-down search with his gun still in his holster, told defendant that there had been a robbery, and asked him what he had been doing. The officer then checked to ascertain if there were any outstanding warrants for defendant's arrest.

The officer also testified that while he was running a check on defendant, the victim identified defendant as the robber. Shortly thereafter, the officer learned that there was a warrant out for defendant's arrest.

Competent evidence in the record thus supports the trial court's finding that defendant was not actually placed in custody until after the identification and the officer's receipt of information concerning the outstanding warrant. Under these circumstances, the trial court's denial of defendant's motions to suppress was proper.

## B.

We also reject defendant's assertion that the search of his apartment was illegal and that the trial court therefore erred in denying defendant's motion to suppress the evidence obtained as a result of that search.

Following defendant's arrest, his parole officer and a police detective conducted a warrantless search of his apartment. Defendant contends that this search exceeded the permissible scope of a lawful, warrantless search by a parole officer. He argues that the

search was unreasonable because it continued after the discovery of a weapon, which had been the initial object of the search.

A parole officer may conduct a warrantless search when he or she has reasonable grounds to believe that a parole violation has occurred. A police officer may accompany the parole officer during such a search. Furthermore, evidence seized within the scope of a reasonable search by a parole officer, even though unrelated to the parole violation, is admissible. *People v. Anderson,* 189 Colo. 34, 536 P.2d 302 (1975).

Here, the warrantless search was proper since there were reasonable grounds to believe that a parole violation had occurred, and the gun and money seized as a result of that search were either evidence probative of the parole violation or in plain view.

Accordingly, the trial court did not err in denying defendant's motion to suppress this evidence.

### C.

Finally, we reject defendant's contention that the trial court erred in denying his motion to suppress the identification on the grounds that it was unduly suggestive.

The identification took place while defendant was being questioned by the police outside his apartment building. The victim was driven up in a police car, and a spotlight was shone on defendant, who was not handcuffed at the time.

Following the victim's identification of defendant, another witness to the robbery was driven to the apartment building and given an opportunity to view the defendant. This witness also identified defendant as the robber.

Although one-on-one show-ups are viewed with disfavor, they are not per se violations of due process. Factors to be considered in determining whether such a show-up is unduly suggestive are: the witness' opportunity to view the criminal at the time of the crime; the witness' degree of attention at the time of the crime; the accuracy of any prior description; the level of certainty at the show-up; and the time between the crime and the identification. *People v. Weller,* 679 P.2d 1077 (Colo.1984).

Both the victim and the witness had a good opportunity to view the robber at the time of the offense and had been fairly attentive. Both victim and witness also gave good descriptions of the robber to the responding officer. In addition, at the show-up, they both identified the defendant as the robber with almost no hesitation, even though the defendant had changed clothes in the interim. Also, defendant was not in handcuffs at the time of the identification. Finally, the victim and the witness identified defendant less than an hour after the robbery.

Upon consideration of the factors enumerated in *People v. Weller, supra,* we conclude that the one-on-one show-up of the defendant was not impermissibly suggestive and that there was not a substantial likelihood of misidentification as a result of the procedures used.

### V.

Defendant next contends that the trial court erred in not dismissing the charges against him because the prosecution failed to follow the notice procedures of Article III of the Interstate Agreement on Detainers Act (IAD), § 24–60–501, C.R.S. (1988 Repl.Vol. 10B). We reject this contention.

While Article III of the IAD requires that a defendant be promptly informed of the contents of a detainer against him, Article IV does not impose such a requirement. Here, the trial court found, with some record support, that the prosecution had proceeded under Article IV, rather than Article III. Moreover, the trial court concluded that, even if the prosecution had proceeded under Article III, defendant failed to show that he was prejudiced by the lack of prompt notice.

Although the prosecution has the burden of proving that the defendant was not prejudiced by a lack of prompt notice under Article III of the IAD, defendant must, nevertheless, assert some claim of prejudice in order to frame the issue. *People v. Johnson,* 819 P.2d 1114 (Colo.App.1991).

Here, defendant does not claim that the trial court's finding that the prosecution proceeded under Article IV was erroneous. In addition, even if the prosecution had proceeded under Article III, defendant has failed to show how he was prejudiced by the lack of notice.

Thus, we conclude that there was no error in the trial court's denial of defendant's motion to dismiss based on an alleged violation of the IAD.

### VI.

Finally, defendant challenges the propriety of his thirty year sentence. He asserts that, because he pled guilty and was sentenced on the same day, his two prior felony convictions should be considered as only one for the purposes of determining whether he is a habitual criminal as defined by the statute. We disagree.

Under the habitual criminal statute, the determinative factor is whether the two prior convictions arose from the same criminal episode. If so, they must be considered one conviction. *See* § 16–13–103(1), C.R.S. (1986 Repl.Vol. 8A).

█ Here, defendant's two prior convictions, although entered on the same day, were the result of separate and distinct criminal episodes. Accordingly, they do not constitute only a single conviction for the purposes of the habitual criminal statute. *See Gimmy v. People*, 645 P.2d 262 (Colo.1982). Therefore, the sentencing court could not have imposed a sentence below the statutory minimum. *See People v. Montgomery*, 737 P.2d 413 (Colo.1987).

The statutory sentencing range applicable here is twenty-five to fifty years. Section 16–13–103(1), C.R.S. (1986 Repl.Vol. 8A). Defendant received a sentence of thirty years, which is well below the maximum. In addition, the trial court properly considered aggravating and mitigating factors in determining defendant's sentence.

We therefore find no error in the sentence imposed.

The judgment of conviction and sentence are affirmed.

NEY and TAUBMAN, JJ., concur.