The PEOPLE of the State of Colorado, Plaintiff–Appellee and Cross–Appellant,

v.

Leo APODACA, Defendant–Appellant and Cross–Appellee.

No. 00CA1789.

Colorado Court of Appeals, Div. IV.

July 5, 2002.

Certiorari Denied Dec. 16, 2002.

Ken Salazar, Attorney General, Lauren Edelstein–Park, Assistant Attorney General, Denver, Colorado; Jeanne M. Smith, District Attorney, Gordon R. Denison, Assistant District Attorney, Colorado Springs, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Leslie A. Goldstein, Steamboat Springs, Colorado, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge NEY.

Defendant, Leo Apodaca, appeals the judgment of conviction entered upon a jury verdict finding him guilty of sexual assault on a child. The People cross-appeal the sentence imposed on that conviction. We affirm the judgment, vacate the sentence, and remand for resentencing.

The victim, a nine-year-old girl, testified that she went to the basement of her house because she was looking for her mother. Defendant, who lived in the basement, lifted the victim up and inserted his fingers into her vagina.

## I.

Defendant argues that the trial court abused its discretion by admitting evidence of a similar transaction for the limited purposes of proving identity. We disagree.

A trial court is granted substantial discretion to decide questions concerning the admissibility of evidence. This rule extends to similar transaction evidence. Indeed, in § 16–10–301, C.R.S.2001, the General Assembly has in effect expressed a policy judgment that similar transaction evidence should be more readily available in sexual assault cases. Consequently, absent a showing that the court has clearly abused its discretion, we must affirm its evidentiary ruling. *People v. Duncan,* 33 P.3d 1180, 1183 (Colo.App.2001).

In a case involving a sexual assault upon a child, evidence of prior similar acts committed by the defendant may be admissible pursuant to § 16–10–301 and CRE 404(b) when offered to show motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident.

For prior acts evidence to be admissible: (1) it must relate to a material fact; (2) it must be logically relevant in that it makes the existence of a material fact more or less probable than it would be without the evidence; (3) its logical relevance must be independent of the prohibited inference that the defendant has a bad character; and (4) the probative value of the evidence must not be substantially outweighed by the danger of

unfair prejudice. *People v. Spoto,* 795 P.2d 1314, 1320 (Colo.1990).

■ In reviewing the admission of other act evidence, we must assume the maximum probative value a reasonable fact finder might give the evidence and the minimum unfair prejudice to be reasonably expected from its introduction. *People v. Nuanez,* 973 P.2d 1260, 1263 (Colo.1999).

■ Here, the prosecution sought to introduce evidence of an incident of abuse that occurred approximately eight years earlier. In that case, the victim, a fifteen-year-old girl who had known defendant for about one year, accepted a ride in his car. Defendant touched the victim's breast, attempted to kiss her breast, and reached under her shorts and inserted his fingers into her vagina.

The prosecution argued that, because of the similarities between the two, the evidence of the earlier assault would be relevant to establish identity, modus operandi, and the absence of mistake or accident as to the charged assault. The trial court analyzed the evidence under *People v. Spoto, supra,* and agreed with the prosecution.

At trial, the prior act evidence was introduced only to prove identity, and the trial court instructed the jury that this was the only purpose for which the evidence could be considered. The trial court repeated this admonition in a written instruction submitted to the jury after the close of the evidence.

Based on our review of the record, we perceive no abuse of discretion in the trial court's decision to admit evidence of the earlier assault. The other act evidence had logical relevance to the material fact of identity, which was independent of the prohibited inference that defendant has a bad character, because, in both cases, defendant took advantage of his acquaintance with a young girl and committed nonconsensual digital penetration while the victim remained clothed. We are satisfied that, in concluding that this probative value was not substantially outweighed by the danger of unfair prejudice, the trial court gave due consideration to the factual distinctions and the time elapsed between the two incidents. Further, any preju-dice to defendant was substantially ameliorated by the trial court's limiting instruction.

## II.

■ On cross-appeal, the People argue that the trial court erroneously concluded that defendant could not be sentenced under the Colorado Sex Offender Lifetime Supervision Act of 1998 (the Act) because he was also subject to sentencing as an habitual criminal. We agree and therefore vacate defendant's sentence and remand for resentencing.

Defendant was convicted of sexual assault on a child in violation of § 18–3–405(1), C.R.S.2001, a class four felony that carries a presumptive sentencing range of two to six years imprisonment. Sections 18–1–105(1)(a)(V)(A), 18–3–405(2), C.R.S.2001.

In addition, defendant was adjudicated an habitual criminal, based on two prior felony convictions within the previous ten years, under the following provision:

> Every person convicted in this state of any class 1, 2, 3, 4, or 5 felony who, within ten years of the date of the commission of the said offense, has been twice previously convicted … of a felony … shall be adjudged an habitual criminal and shall be punished for the felony offense of which such person is convicted by confinement in a correctional facility for a term of three times the maximum of the presumptive range pursuant to section 18–1–105, C.R.S., for the class of felony of which such person is convicted.

Section 16–13–101(1.5), C.R.S.2001.

In this case, it is undisputed that the habitual criminal sentence would be eighteen years, notwithstanding that defendant also was found guilty of a crime of violence count under § 16–11–309(2)(b)(I), C.R.S.2001. *See People v. Hoefer,* 961 P.2d 563, 568–69 (Colo.App.1998)(habitual criminal sentencing statute preempts crime of violence sentencing statute). And contrary to the trial court's calculation of a sentence of twenty-four years, the extraordinary risk of harm enhancement is inapplicable to this offense committed after November 1, 1998. *See* § 18–1–105(9.7)(b)(IV), C.R.S.2001.

Further, we conclude, contrary to the trial court's ruling, that the habitual criminal sentencing statute and the Act can be reconciled and that defendant is therefore subject to sentencing under both.

The Act provides, in relevant part, as follows:

(1)(a) Except as otherwise provided [concerning crimes of violence, habitual sex offenders against children, HIV-positive defendants, and probationary sentences], the district court having jurisdiction shall sentence a sex offender to the custody of the department for an indeterminate term of *at least* the minimum of the presumptive range specified in section 18–1–105, C.R.S., for the level of offense committed and a maximum of the sex offender's natural life.

(b) If the sex offender committed a sex offense that constitutes a crime of violence, as defined in section 16–11–309, the district court shall sentence the sex offender to the custody of the department for an indeterminate term of *at least* the midpoint in the presumptive range for the level of offense committed and a maximum of the sex offender's natural life.

Section 16–13–804, C.R.S.2001 (emphasis added). For purposes of this statute, defendant is a "sex offender" because he was convicted of an enumerated sex offense. *See* § 16–13–803(4), (5)(a), C.R.S.2001. Because defendant was also convicted of a crime of violence, § 16–13–804(1)(b) of the Act requires a sentence of at least four years (the midpoint in the class four presumptive range) with a maximum term of defendant's natural life.

The Act specifically explains that when a defendant is also convicted as an habitual sex offender against children, "the district court shall sentence the sex offender to the custody of the department for an indeterminate term of at least three times the upper limit of the presumptive range for the level of offense committed and a maximum of the sex offender's natural life." Section 16–13–804(1)(c), C.R.S.2001. However, the Act does not contain a similar provision explaining how it is to be applied when, as here, the defendant is convicted under the general habitual criminal statute. Thus, this question must be answered by means of statutory interpretation.

■ Our fundamental responsibility when interpreting a statute is to give effect to the General Assembly's purpose or intent in enacting the statute. We begin with the plain language of the statute itself. If the statutory language unambiguously sets forth the legislative purpose, we need not apply additional rules of statutory construction to determine the statute's meaning. Conversely, if the statute is ambiguous or it appears to conflict with other provisions, then we may rely on other factors, such as legislative history, prior law, the consequences of a given construction of the statute, and the end to be achieved by the statute, to determine its meaning. *Martin v. People*, 27 P.3d 846 (Colo.2001).

■ We assume that the General Assembly intended that the entire statute be effective, and we must read and consider the statutory scheme as a whole to give consistent, harmonious, and sensible effect to all its parts. If possible, we must reconcile statutes governing the same subject. In interpreting a comprehensive legislative scheme, we must construe each provision to further the overall legislative intent behind the statutes. *Martin v. People, supra.*

■ We presume that the General Assembly intends a just and reasonable result when it enacts a statute, and we will not follow a statutory construction that defeats the legislative intent or leads to an unreasonable or absurd result. *People v. Gholston*, 26 P.3d 1, 7 (Colo.App.2000).

Here, nothing in the plain language of § 16–13–804(1)(a) of the Act indicates how that section is to be coordinated with § 16–13–101(1.5), the general habitual criminal sentencing statute. The legislative history of the Act does not shed any light upon the question. *See* Hearings on H.B. 98–1156 before the Senate Judiciary Committee (Apr. 29, 1998) and the House Judiciary Committee (Jan. 27, 1998), 61st General Assembly, Second Session. The legislative history of the 1998 amendment adding § 16–13–804(1)(c) is similarly unilluminating. *See* Hearings on H.B. 00–1239 before the Senate Judiciary

Committee, 62nd General Assembly, Second Session (Mar. 8, 2000).

The parties' opposing explanations for the General Assembly's decision to enact that amendment without also enacting a similar amendment referring to § 16–13–101(1.5) are unconvincing.

Thus, we reject the People's suggestion that the General Assembly perceived a conflict between §§ 16–13–804(1)(a) and 18–3–412(2) that it did not perceive between §§ 16–13–804(1)(a) and § 16–13–101(1.5), as well as defendant's suggestion that the General Assembly intended habitual criminals to serve the more severe sentence required by the habitual criminal sentencing statute rather than what he views as the less severe indeterminate life sentence required under the Act. *See People v. Montgomery*, 737 P.2d 413, 416–17 (Colo.1987)(a lengthy determinate sentence under the habitual criminal sentencing statute is not a more severe sentence than a life sentence with discretionary parole because it is possible that the defendant will be denied parole and serve the entire sentence). We cannot say that the absence of a provision in § 16–13–804 reconciling it with § 16–13–101(1.5) demonstrates that the General Assembly intended either to promote or to prohibit such a reconciliation.

Nevertheless, we conclude that the two statutes can be interpreted in a manner that is consistent with their respective purposes. The eighteen-year sentence required by the habitual criminal sentencing statute is "at least" as long as the four-year minimum required by § 16–13–804(1)(a) of the Act. Thus, a sentence of eighteen years to defendant's natural life would be lawful under the Act. *See People v. Smith*, 29 P.3d 347 (Colo. App.2001). Such an indeterminate sentence would also be lawful under the habitual criminal sentencing statute, § 16–13–101(1.5), unless that statute's specification of a determinate length sentence is construed as establishing a statutory maximum. We conclude that interpreting the habitual criminal statute as establishing a maximum sentence would lead to an absurd result.

The habitual criminal sentencing statute was enacted for the purpose of increasing the punishment for repeat offenders. *Gimmy v. People*, 645 P.2d 262, 266 (Colo.1982). Consistent with this purpose, the habitual criminal sentencing statute has been interpreted as preempting any otherwise applicable sentencing statute that would result in a less severe sentence. See *People v. Hoefer, supra; People v. Pena*, 794 P.2d 1070, 1071–72 (Colo.App.1990), *overruled on other grounds by Robles v. People*, 811 P.2d 804, 807 (Colo. 1991); *People v. Reyes*, 728 P.2d 349 (Colo. App.1986). We are unaware of any decision interpreting the habitual criminal sentencing statute as establishing the maximum possible sentence where the defendant is also subject to sentencing under a second statute authorizing a greater maximum sentence. We decline to adopt such a construction in this case because it would flout the central purpose of the habitual criminal sentencing statute.

Such a construction would also be inconsistent with the central purpose of the Act to provide for the lifetime supervision and treatment of sex offenders. *See* § 16–13–801, C.R.S.2001 (legislative declaration). The Act accomplishes this goal by subjecting sex offenders to indeterminate sentences to imprisonment that are not deemed to be discharged if the offender is released for an indeterminate period of parole. Section 16–13–806, C.R.S.2001. Clearly, this objective would be frustrated if habitual criminals, such as defendant, were exempt from the Act and only subject to incarceration for a definite term of years followed by definite period of mandatory parole.

Where, as here, a sex offender is also convicted as an habitual criminal, there is only one way to interpret §§ 16–13–804(1)(a) and 16–13–101(1.5) that is consistent with the language and goals of both statutes: in such a situation, the trial court must impose a sentence to the custody of the DOC for an indeterminate term of at least three times the upper limit of the presumptive range for the level of offense committed and a maximum of the sex offender's natural life. This interpretation harmonizes the two sections, and, to the extent that it resolves a conflict between them, it is consistent with the maxim that the specific statute limited to sexual offenders prevails over the general habitual

criminal statute. *See* § 2–4–205, C.R.S.2001; *Martin v. People*, supra, 27 P.3d at 852.

Accordingly, we conclude the correct sentence in this case is an indeterminate sentence of eighteen years to defendant's natural life.

The judgment is affirmed. The sentence is vacated, and the case is remanded for resentencing consistent with the views expressed in this opinion.

Justice ERICKSON and Judge RULAND, concur.[1]