2015 COA 45

**The PEOPLE of the State of Colorado,**
Plaintiff–Appellee,

v.

**Guerreros Lorenzo LOPEZ,**
Defendant–Appellant.

Court of Appeals No. 13CA1681

Colorado Court of Appeals,
Div. IV.

Announced April 23, 2015

Rehearing Denied May 21, 2015

Cynthia H. Coffman, Attorney General, Lisa K. Michaels, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Martinez Law, LLC, Esteban A. Martinez, Longmont, Colorado, for Defendant–Appellant.

Opinion by JUDGE BERNARD

¶ 1 This appeal requires us to resolve two novel issues. First, did the crime of obstructing a peace officer, as it was defined in 2011, only apply to a defendant's conduct during an arrest? We answer this question "no." We analyze this issue in Part II.A.2.b.

¶ 2 Second, if a court denied a defendant's Crim. P. 33 motion without a hearing, and that motion raised claims of ineffective assistance of counsel, what standard of review should we apply on appellate review? We answer this question by concluding that we should apply the standards for reviewing orders denying Crim. P. 33 motions, not the standards for reviewing orders denying Crim. P. 35(c) motions. We analyze this issue in Part II.C.

¶ 3 A jury convicted defendant, Guerrero Lorenzo Lopez, of second degree assault causing serious bodily injury, menacing by the use of a deadly weapon, and obstructing a peace officer. He appeals the judgment of conviction and the trial court's order denying his Crim. P. 33 motion for a new trial. We affirm.

## I. Background

¶ 4 Defendant assaulted his wife in 2011 and broke her clavicle. She went to a hospital for treatment. Police officers went to the hospital to investigate the assault.

¶ 5 A uniformed officer found defendant outside the hospital. She asked to speak with him about his wife's injuries. The subsequent events, which we describe in more detail below, led to some of the charges and some of the convictions in this case.

## II. Analysis

### A. Sufficiency of the Evidence

¶ 6 We review de novo whether there is sufficient evidence to support a conviction. See Dempsey v. People, 117 P.3d 800, 807 (Colo.2005). Evidence is sufficient when "any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt." People v. McIntier, 134 P.3d 467, 471 (Colo.App.2005) (citing People v. Sprouse, 983 P.2d 771, 777 (Colo. 1999)); see also Clark v. People, 232 P.3d 1287, 1291 (Colo.2010).

¶ 7 Defendant contends that the evidence was insufficient to establish that he (1) made a threat; (2) knowingly placed or attempted to place the victim in fear of imminent serious bodily injury; and (3) used a deadly weapon as required to establish the crime of felony menacing. See § 18–3–206(1)(a), C.R.S.2014 (menacing is a class five felony rather than a class three misdemeanor when accomplished "[b]y the use of a deadly weapon"). We disagree.

#### 1. Menacing

##### a. The Elements of Misdemeanor Menacing

¶ 8 "A person commits the crime of [misdemeanor] menacing if, by any threat or physical action, he or she knowingly places or attempts to place another person in fear of

imminent serious bodily injury." § 18–3–206(1). "[W]hat the victim saw or heard, and how the victim reacted, are relevant considerations in determining whether [the] defendant had the requisite intent to place the victim in fear." *People v. Manzanares*, 942 P.2d 1235, 1239 (Colo.App.1996).

¶ 9 The first officer who talked to defendant outside the hospital—the named victim in the felony menacing count—testified that defendant responded aggressively to her inquiry about his wife's injuries. He was talking on his cellular telephone, and he told the officer that she would have to wait to talk to him until he had finished his conversation. He spoke to her angrily.

¶ 10 After defendant finished speaking on the telephone, the officer again asked him about his wife's injuries. She noticed that he smelled like he had been drinking. When she asked him if he had been drinking, he replied that, although he "just had" three drinks, he was not drunk.

¶ 11 He began to walk toward the officer. He seemed angry. She unholstered and activated her Taser. She held it in front of her, pointing it at the ground, so that she could use it quickly.

¶ 12 Defendant responded by stating that he had a knife. He lifted up his shirt, exposing the front of his abdomen. But the officer did not see a knife. Defendant dropped his shirt. The officer perceived defendant's conduct as threatening. She thought that defendant was challenging her, as if to say, "I've got a knife … [and] what are you going to do about it[?]"

¶ 13 The officer ordered defendant to back up against the wall and to stay still. She called for backup. She was prepared to fire the Taser at defendant if he moved toward her or if he tried to grab a knife.

¶ 14 A second police officer arrived. When the second officer began to frisk defendant for weapons by holding defendant's hands behind his back, defendant resisted. Although the second officer instructed defendant to face away from him, defendant repeatedly tried to turn around and face the officer. The second officer found a knife, but he did not clearly remember whether he had found the knife in the waistband or in the pocket of defendant's pants.

¶ 15 Viewed in the light most favorable to the prosecution, this evidence establishes both that defendant made a threat and that he placed or attempted to place the first officer in fear of imminent serious bodily injury. *See id.* We therefore conclude that the evidence was sufficient to support a conviction for misdemeanor menacing under section 18–3–206(1).

### b. The Additional Element in Felony Menacing

¶ 16 We begin this portion of our analysis by noting that there is a distinction between two subsections of the felony menacing statute that establish alternative ways of committing the offense. The subsection that we address in this case is section 18–3–206(1)(a). The court instructed the jury about the elements of this subsection. This subsection states that misdemeanor menacing becomes a felony if the crime is committed "[b]y the *use* of a deadly weapon or any article used or fashioned in a manner to cause a person to reasonably believe that the article is a deadly weapon." § 18–3–206(1)(a) (emphasis added).

¶ 17 The court did not instruct the jury about the elements of the other subsection, which is section 18–3–206(1)(b). That subsection states that misdemeanor menacing becomes felony menacing if the defendant "represent[ed] verbally or otherwise that he or she [was] armed with a deadly weapon."

¶ 18 Returning to the section that applies to this case, "in defining felony menacing, the phrase 'use of a deadly weapon' is broad enough to include the act of holding a weapon in the presence of another in a manner that causes the other person to fear for his safety, even if the weapon is not pointed at the other person." *People v. Dist. Court*, 926 P.2d 567, 571 (Colo.1996) (citing *People v. Hines*, 780 P.2d 556, 559 (Colo.1989)). The "use" element of felony menacing is satisfied when a defendant displays a weapon, even if the victim does not see the weapon. *People v. Saltray*, 969 P.2d 729, 731–32 (Colo.App. 1998).

134

¶ 19 The first officer testified that defendant told her that he had a knife. She interpreted his statement as a threat. But she also testified that

- she did not see the knife when defendant lifted his shirt;
- defendant never held the knife;
- defendant never tried to pull out the knife;
- defendant did not reach into his pockets after putting his shirt down; and
- she first saw the knife after it was recovered by a second officer, who had searched defendant.

¶ 20 Although the second officer testified that he had found a knife in defendant's possession, he did not remember where he had found it. It could have been in defendant's pocket, as he had written in his report, or it could have been in the waistband of defendant's pants.

¶ 21 We conclude that this evidence is nonetheless sufficient to support a conclusion that defendant "used" the knife to menace the first officer. We reach this conclusion because we further conclude that, looking at the evidence as a whole and in the light most favorable to the prosecution, a "rational trier of fact" might accept it as sufficient to prove defendant's guilt beyond a reasonable doubt. *See McIntier*, 134 P.3d at 471.

¶ 22 Defendant told the first officer that he had a knife. She saw him raise his shirt and expose his abdomen. Although she did not see the knife, the second officer recovered one when he searched defendant. And, although there is contradictory evidence in the record, the second officer testified that he might have found the knife in the waistband of defendant's pants.

¶ 23 We conclude that a rational trier of fact could look at this evidence and decide that it was sufficient to prove, beyond a reasonable doubt, that defendant had the knife in the waistband of his pants and that he intended to show it to the first officer when he lifted his shirt. By doing so, the rational trier of fact could find that defendant committed the crime of felony menacing "[b]y the use of ... any article used or fashioned in a manner to cause a person to reasonably believe that the article is a deadly weapon." § 18–3–206(1)(a).

¶ 24 In other words, the rational trier of fact could find that defendant displayed the knife, even though the first officer did not see it. The "proper focus" in a felony menacing case is on "the intent and conduct of [the defendant], not of the victim." *People v. Shawn*, 107 P.3d 1033, 1035 (Colo.App.2004). So "it is not necessary to show ... that the victim actually knew a deadly weapon was involved." *Id.*; *Saltray*, 969 P.2d at 731–32.

## 2. Obstructing a Peace Officer

¶ 25 Defendant's contention that the record does not contain sufficient evidence to support the conviction for obstructing a peace officer has two parts.

¶ 26 First, he asserts that the obstructing statute applies only when a peace officer is "acting under color of his [or her] official authority as defined in [section] 18–8–103" (the resisting arrest statute). Ch. 121, sec. 1, § 40–8–104(2), 1971 Colo. Sess. Laws 454. The reference to the resisting arrest statute, his contention continues, means that a person can only commit the crime of obstructing a peace officer if an officer is making an arrest. He finishes his argument by asserting that, because the first officer did not arrest him, he cannot be guilty of the crime of obstructing her.

¶ 27 Second, he contends that (1) the trial court instructed the jury that one of the elements of the crime of obstructing a peace officer was that the first officer was "acting under the color of [her] official authority"; (2) the jury was instructed that "acting under the color of official authority" meant that a peace officer had made a good faith judgment to arrest a person; (3) the evidence did not establish that the first officer had decided to arrest defendant; and (4) the evidence was therefore insufficient to support his conviction for obstructing a peace officer.

¶ 28 We disagree with both contentions.

### a. Principles of Statutory Construction

¶ 29 We must interpret the obstructing statute to resolve defendant's conten-

tions. This is a question of law that we review de novo. *See People v. Garcia*, 113 P.3d 775, 780 (Colo.2005). "When interpreting statutes, we first look to their plain language, and we interpret that language according to its common meaning." *People v. Torrez*, 2013 COA 37, ¶ 30, 316 P.3d 25.

¶ 30 Our purpose is to ascertain and give effect to the intent of the legislature. *People v. Apodaca*, 58 P.3d 1126, 1130 (Colo.App.2002). To that end, "we must read and consider the statutory scheme as a whole." *Id.* We read it as a whole "to give consistent, harmonious, and sensible effect to all its parts." *Id.* If we are able, "we must reconcile statutes governing the same subject." *Id.* So, when we interpret "a comprehensive legislative scheme, we must construe each provision to further the overall legislative intent behind the statutes." *Id.* The general rule is that we construe words and phrases according to their common usage. § 2–4–101, C.R.S.2014.

### b. Analysis of the Obstructing a Peace Officer Statute

¶ 31 As a preliminary matter, we note that subsection (2) of the obstructing statute was amended in 2012. *Compare* Ch. 121, sec. 1, § 40–8–104(2), 1971 Colo. Sess. Laws 454, *with* § 18–8–104(2), C.R.S.2014. Because the events in this case occurred in 2011, the jury convicted defendant under the statute in effect before the legislature amended subsection (2). We limit our analysis accordingly.

¶ 32 At the time of the events in this case, subsection (1)(a) of the obstructing statute stated:

A person commits obstructing a peace officer ... when, by using or threatening to use violence, force, physical interference, or an obstacle, such person knowingly obstructs, impairs, or hinders the enforcement of the penal law or the preservation of the peace by a peace officer, acting under color of his or her official authority. ...

§ 18–8–104(1)(a), C.R.S. 2014; Ch. 121, sec. 1, § 40–8–104(2), 1971 Colo. Sess. Laws 454.

¶ 33 Subsection (1)(a) clearly refers to peace officer conduct that incorporates a multitude of other activities in addition to making arrests. The "enforcement of the penal law" includes, for just one example, investigating crimes. The "preservation of the peace" includes, for just one example, directing traffic.

¶ 34 At the time of the events in this case, subsection (2) of the obstructing statute stated:

It is not a defense to a prosecution under this section that the peace officer was acting in an illegal manner, if he or she was acting under color of his or her official authority as defined in section 18–8–103(2).

§ 18–8–104(2).

¶ 35 Section 18–8–103, C.R.S.2014, establishes the offense of resisting arrest. Section 18–8–103(2) states:

A peace officer acts "under color of his official authority" when, in the regular course of assigned duties, he is called upon to make, and does make, a judgment in good faith based upon surrounding facts and circumstances that an arrest should be made by him.

¶ 36 We conclude, for the reasons that we explain below, that

- although persons can commit the crime of obstructing a peace officer under subsection (1)(a) of the statute if they obstruct, impair, or hinder arrests;

- they can also commit that crime if they obstruct, impair, or hinder other acts that peace officers take to enforce the penal law or to preserve the peace;

- the language in the obstructing statute that refers to "color of official authority" in subsection (1)(a) applies to all the conduct that it describes, not only to arrests; and

- the reference to "color of official authority" in subsection (2) of the obstructing statute, in terms of the description of that term in the resisting arrest statute, *only* applies to eliminate the defense that an officer was "acting in an illegal manner" in the course of making an arrest.

¶ 37 First, the description of "color of official authority" in the resisting arrest statute

in the context of arrest makes simple sense. That statute applies only to arrests.

¶ 38 Second, focusing on the plain language of subsection (2), *see Torrez*, ¶ 30, it is clear that the reference to "color of official authority" in the resisting arrest statute only applied in one situation: to eliminate the defense that a peace officer was acting in "an illegal manner." It worked like this:

1. a defendant charged with obstructing a peace officer

2. could not use the *defense* that an officer was acting illegally

3. if the officer *arresting* the defendant

4. was acting under color of his or her official authority.

¶ 39 Third, expanding our view, we see that the language of subsection (1)(a) did not contain a parallel reference to the resisting arrest statute. So, looking at the plain language of subsections (1)(a) and (2) as a whole, *see Apodaca*, 58 P.3d at 1130, the absence of such a parallel reference has meaning because we cannot "add words to a statute." *Boulder Cnty. Bd. of Comm'rs v. HealthSouth Corp.*, 246 P.3d 948, 951 (Colo. 2011).

¶ 40 What is this meaning? We conclude that the presence of the reference to the resisting arrest statute in subsection (2) and the absence of such a reference in subsection (1)(a) was a deliberate legislative choice. *See People v. Seacrist*, 874 P.2d 438, 440 (Colo.App.1993)(Appellate courts apply "the presumption that the General Assembly was aware that qualifying language could be added to limit application of the statute . . . and that it would have done so if such had been its intent.").

¶ 41 What was that deliberate legislative choice? It was to limit the application of a particular defense when an officer was involved in one type of conduct—making an arrest—that constituted a subset of all the peace officer conduct defined in subsection (1)(a)—enforcing the penal law or preserving the peace. If we metaphorically look at all the possible types of peace officer conduct in subsection (1)(a) as citrus fruit—oranges, grapefruit, lemons, tangerines, kumquats, and limes, for example—the purpose of subsection (2) was to deny a defendant a particular defense if a peace officer was engaged in the subset of conduct constituting one citrus fruit—say, an orange.

¶ 42 When we read the plain language of subsections (1)(a) and (2) as a whole, it becomes clear that the legislature did not intend to employ the phrase "color of official authority" in a way that would have removed all peace officer conduct but making arrests from the coverage of the obstructing statute. If the legislature had intended to limit the coverage of the obstructing statute to making arrests, (1) it would have said so; and (2) it would not have included the broader references to enforcing the penal law and preserving the peace. *See Apodaca*, 58 P.3d at 1130 (We read a statute as a whole "to give consistent, harmonious, and sensible effect to all its parts."). In other words, if the General Assembly had intended to limit the coverage of the obstructing statute to just oranges, it would not have so clearly added other citrus fruit to it.

¶ 43 Upon reaching this point in our analysis, we can see that defendant's reliance on *Dempsey*, 117 P.3d at 812, is misplaced. The supreme court applied the subsection (2) requirement in *Dempsey* in the context of peace officers making an arrest. It did not analyze the issue whether the subsection (2) requirement applied to peace officer conduct that did not include making arrests.

¶ 44 Based on this analysis, we conclude that the obstructing statute applied to defendant's conduct even though the first officer did not arrest him.

### c. Analysis of the Evidence Supporting the Obstructing a Peace Officer Conviction

¶ 45 We have concluded above that subsection (2) of the obstructing statute—which focused on an officer's decision to make an arrest—only applied if a defendant raised a defense that a peace officer was acting in an illegal manner during an arrest. But defendant did not raise such a defense here, so the trial court erred when it instructed the jury to consider whether the officer had decided to arrest defendant. *See People v. Reed*, 932 P.2d 842, 844 (Colo.App.

1996) (When an exception is found in a different clause from the statutory section defining the elements of an offense, it is the defendant's burden to claim it as an affirmative defense.).

¶ 46 The erroneous instruction effectively required the prosecution to establish an additional element of the offense: that the officer had been "called upon to make, and [did] make, a judgment ... that an arrest should be made by [her]." *See* § 18–8–103(2). This error effectively *increased* the prosecution's burden of proof. Such an error could only inure to defendant's benefit, so we must disregard it as harmless. *See People v. Shreck*, 107 P.3d 1048, 1058–59 (Colo.App.2004).

¶ 47 Turning to the evidence, the jury's verdict reflects its findings that the prosecution had established (1) all the elements of the offense of obstructing a peace officer under subsection (1)(a); *and* (2) that the first officer had made a judgment that she should arrest defendant. But we have concluded above that this second finding was *not* necessary to support a conviction for obstructing a peace officer under subsection (1)(a). And our review of the record leads us to conclude that there is sufficient evidence to support a finding that defendant violated subsection (1)(a), even though the first officer had not made a judgment to arrest defendant.

### B. The Trial Court Did Not Err By Instructing the Jury on the Definition of Criminal Attempt

¶ 48 Relying on *People v. DeHerrera*, 697 P.2d 734, 740 (Colo.1985), defendant contends that the trial court erred when it defined the term "attempt," even though the prosecution had not charged defendant with attempt under section 18–3–203(1)(b), C.R.S. 2014. He asserts that this definition lessened the prosecution's burden of proof. We disagree.

¶ 49 When, as in this case, a defendant fails to object to a written jury instruction, we review it for plain error. *People v. Garcia*, 28 P.3d 340, 344 (Colo.2001). Plain errors are obvious and substantial errors that so undermine the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Id.*; *People v. Miller*, 113 P.3d 743, 750 (Colo.2005). With respect to jury instructions, this standard requires the defendant to show that the instruction affected a substantial right and that there is a reasonable possibility that the error contributed to the defendant's conviction. *Miller*, 113 P.3d at 750.

¶ 50 Defendant was charged with menacing. Section 18–3–206(1) provides that "[a] person commits the crime of menacing if, by any threat or physical action, he or she knowingly places or *attempts* to place another person in fear of imminent serious bodily injury." (Emphasis added.) The court included these elements in one instruction.

¶ 51 In a second instruction, the court provided the jury with a series of definitions. One of the terms defined in this instruction was "attempt." The definition stated that

[a] person commits criminal "attempt," if, acting with the kind of culpability otherwise for the commission of an offense, [he or she] engages in any conduct, whether act, omission, or possession, which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense. Factual or legal impossibility of committing the offense is not a defense if the offense could have been committed had the attendant circumstances been as the actor believed them to be, nor is it a defense that the crime attempted was actually perpetrated by the accused.

¶ 52 The concept of attempt as it applied to the crime of menacing was therefore defined. *See DeHerrera*, 697 P.2d at 740 ("Since one of the elements of the second degree assault charges was an attempt to cause bodily injury to another person, it was certainly proper for the court to give some instruction to the jury on the meaning of the term 'attempt' in the context of assault in the second degree.").

¶ 53 But the error that our supreme court discussed in *DeHerrera* concerned the structure of the attempt instruction. The instruction in that case added a paragraph that "charged the jury as if the crime of criminal attempt were being submitted to them for their consideration." *Id.*

¶ 54 We conclude that, based on the language of the instruction in this case that defined the term "attempt," this instruction did not state that the court was submitting the crime of criminal attempt to the jury for its consideration. Rather, it simply defined the term. And a reading of all the instructions defining the elements of the crime makes clear that this definition only applied to one of them—menacing—because only that crime contained the term "attempt." We therefore further conclude that this definitional instruction was not error under De-Herrera, let alone plain error.

### C. The Trial Court Did Not Abuse Its Discretion When It Denied Defendant's Motion for New Trial

¶ 55 Defendant contends that the trial court erred when it denied his motion for a new trial because his trial counsel had been ineffective. We disagree.

¶ 56 Defendant filed a motion with the trial court shortly after the jury convicted him. He alleged that his trial counsel had been ineffective. The court allowed trial counsel to withdraw, and it appointed new counsel to represent defendant.

¶ 57 Newly appointed counsel filed a motion for a new trial under Crim. P. 33. It alleged that trial counsel had been ineffective. The trial court denied this motion without a hearing.

#### 1. General Ineffective Assistance of Counsel Principles

¶ 58 To prevail on a claim of ineffective assistance of counsel, a defendant must establish that counsel's representation was deficient and that the deficient representation was prejudicial. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); People v. Finney, 2012 COA 38, ¶ 66, 328 P.3d 205. If a defendant fails to establish one prong of this test, we need not address the other. Davis v. People, 871 P.2d 769, 779 (Colo.1994). Bare or conclusory allegations without supporting detail do not warrant an evidentiary hearing. See People v. Esquivel–Alaniz, 985 P.2d 22, 25 (Colo.App.1999); accord People v. Osorio, 170 P.3d 796, 800 (Colo.App.2007).

¶ 59 In determining whether trial counsel's performance was deficient, a reviewing court must evaluate the representation "from counsel's perspective at the time the representation occurred, ignoring 'the distorting effects of hindsight.'" Davis, 871 P.2d at 772 (quoting Strickland, 466 U.S. at 689, 104 S.Ct. 2052). We must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689, 104 S.Ct. 2052 (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

¶ 60 To prove prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052 (internal quotation marks omitted).

#### 2. Crim. P. 33(a) Versus Crim. P. 35(c)

¶ 61 As an initial matter, we recognize that the prosecution argues on appeal that defendant could not raise ineffective assistance of counsel claims in a Crim. P. 33 motion for a new trial. This argument has some force.

¶ 62 The purpose of a Crim. P. 33 motion is to allow the trial court an opportunity to correct its errors. See Losavio v. Dist. Court, 182 Colo. 186, 188, 512 P.2d 264, 266 (1973)("'The obvious purpose of a motion for a new trial is to accord the trial [court] a fair opportunity to consider and correct, if necessary, any erroneous rulings and to acquaint [the court] with the specific objection to those rulings.'" (quoting Perry v. People, 116 Colo. 440, 443, 181 P.2d 439, 440–41 (1947))); Haas v. People, 155 Colo. 371, 377, 394 P.2d 845, 848 (1964)("The only purpose of . . . a motion for a new trial is to afford a fair opportunity to the trial court to correct its own errors."); Cook v. People, 129 Colo. 14, 15, 266 P.2d 776 (1954)("The purpose of a motion for new trial is to accord the trial [court] an opportunity to consider, and correct if necessary, any erroneous rulings" that

it may have made, and "to acquaint·[it] with the specific objections to those rulings.").

¶ 63 Defendant's Crim.· P. 33 motion, the prosecution's contention begins, did not allege that the trial court made erroneous rulings or decisions during the trial. It alleged, instead, that his defense counsel was ineffective. Because such an allegation focuses on defense counsel's conduct, not on the trial court's decision-making, the prosecution submits that the issues that defendant raised did not fall within the scope of Crim. P. 33.

¶ 64 Despite its superficial appeal, we will not address this argument because we can decide this case on narrower grounds. *See Fasing v. LaFond,* 944 P.2d 608, 612 (Colo. App.1997) (an appellate court does not have to decide all issues on appeal when it can decide a case on narrower grounds); *see also People v. Aarness,* 150 P.3d 1271, 1277 (Colo.2006)(appellate court may affirm trial court's ruling on different grounds).

¶ 65 But our decision that we will not consider the prosecution's argument does not mean that we agree with defendant's contention. Defendant asserts that we should evaluate the trial court's ruling on his Crim. P. 33 motion with the same analytical lenses that we would use when evaluating a postconviction court's ruling denying a Crim. P. 35(c) motion.

¶ 66 We conclude, instead, that applying Crim. P. 35(c) standards to Crim. P. 33 new trial motions would undermine our supreme court's express preference for adjudicating ineffective assistance of counsel claims in Crim. P. 35(c) motions. *See People v. Thomas,* 867 P.2d 880, 886 (Colo.1994). This preference "promotes judicial economy because the conviction may be overturned in the course of [a] direct appeal." *Id.; cf. Moore v. People,* 2014 CO 8, ¶ 16, 318 P.3d 511 ("[A] defendant's challenge to the knowing, voluntary, and intelligent waiver of the right to testify may be raised only through a postconviction proceeding.").

¶ 67 Our conclusion has important consequences because it structures our review of defendant's contention that the trial court erred when it denied his Crim. P. 33 motion.

These consequences stem from differences between Crim. P. 35(c) and Crim. P. 33.

¶ 68 "Crim. P. 35(c)(3) requires that the trial court must have sentenced the defendant and must have entered a 'judgment of conviction' before a defendant can challenge the conviction." *Kazadi v. People,* 2012 CO 73, ¶ 18, 291 P.3d 16 (quoting Crim. P. 35(c)(3)). Crim. P. 35(c)(3)(VIII) specifically provides that claims of ineffective assistance of counsel may be raised in a motion for postconviction relief. Such a motion "may be denied without an evidentiary hearing *only* where the motion, files, and record in the case clearly establish that the allegations presented in the defendant's motion are without merit and do not warrant postconviction relief." *Ardolino v. People,* 69 P.3d 73, 77 (Colo.2003)(emphasis added). We review de novo a trial court's decision to deny a Crim. P. 35(c) motion without a hearing. *People v. Gardner,* 250 P.3d 1262, 1266 (Colo. App.2010).

¶ 69 A trial court is not required to hold an evidentiary hearing on a motion for new trial under Crim. P. 33. *People v. Eckert,* 919 P.2d 962, 968 (Colo.App.1996). Rather, "[i]f such a motion is filed, the trial court may dispense with oral argument on the motion after it is filed." Crim. P. 33(a). "Indeed, 'evidentiary hearings on new trial motions in criminal cases are the exception rather than the rule.'" *People v. McNeely,* 222 P.3d 370, 377 (Colo.App.2009) (quoting *United States v. Connolly,* 504 F.3d 206, 220 (1st Cir.2007)), *overruled on other grounds by Gibbons v. People,* 2014 CO 67, 328 P.3d 95. A trial court's decision to deny a motion for new trial without an evidentiary hearing is reviewed for an abuse of discretion. *Esquivel–Alaniz,* 985 P.2d at 25; *Eckert,* 919 P.2d at 968. We will uphold the trial court's ruling if it is not manifestly arbitrary, unreasonable, or unfair. *Esquivel–Alaniz,* 985 P.2d at 25.

¶ 70 To summarize, there are two important differences between Crim. P. 35(c) and Crim. P. 33 that affect our review of this issue.

¶ 71 First, Crim. P. 35(c) presumes that a postconviction court will hold hearings if the

defendant raised allegations of ineffective assistance of counsel. This presumption is only overcome if the motion, files, and record clearly show that defendant's claims lack merit. Crim. P. 33 does not contain such a presumption.

¶ 72 Second, we review de novo a postconviction court's decision to deny a Crim. P. 35(c) motion without a hearing. We review a trial court's decision to deny a Crim. P. 33 motion for an abuse of discretion, even if the trial court did not hold a hearing.

¶ 73 In other words, defendants, such as defendant in this case, who elect to raise claims of ineffective assistance in a Crim. P. 33 motion are bound by the standards of review attendant to Crim. P. 33. They do not receive the benefit of the standards of review attendant to Crim. P. 35(c). *See Cummings v. People*, 785 P.2d 920, 928 (Colo.1990) (Vollack, J., concurring in part and dissenting in part).

### 3. Analysis of the Trial Court's Order

¶ 74 Because defendant, through his newly appointed counsel, filed a motion before his sentencing hearing that mentioned Crim. P. 33 repeatedly, but that did not refer to Crim. P. 35(c) at all, he is bound by the choice that he made. So we shall review the trial court's decision to deny defendant's Crim. P. 33 motion without a hearing for an abuse of discretion. *See Esquivel–Alaniz*, 985 P.2d at 25.

¶ 75 And, in some instances, we will exercise our discretion to rely on grounds different than the ones that the trial court employed. *See Aarness*, 150 P.3d at 1277. Based on our review of the record, we conclude, for the following reasons, that the trial court's rulings were not manifestly arbitrary, unreasonable, or unfair. *See Esquivel–Alaniz*, 985 P.2d at 25.

1. Defendant contends that trial counsel was ineffective because he did not obtain records from, or interview employees of, the department of social services to determine whether his wife had previously made false reports about his conduct. But defendant's motion did not explain how this evidence would have established a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

2. Trial counsel was not ineffective when he stipulated that defendant's wife's broken clavicle constituted serious bodily injury. The critical issue at trial was whether defendant had inflicted the injury, not whether the broken clavicle was serious bodily injury. Defendant did not explain how counsel's stipulation prejudiced his case. *See id.*

3. The allegation that trial counsel improperly advised defendant of the effect of a potential plea disposition was beyond the scope of potential trial errors covered by Crim. P. 33. And defendant alleged that he did not "fully understand" the parameters of the offer; he did *not* allege what trial counsel should have told him, or that he would have taken the offer had he fully understood it. *See Carmichael v. People*, 206 P.3d 800, 807 (Colo.2009) (The defendant must show that "there is a reasonable probability that, but for counsel's errors, he would have accepted the plea offer rather than going to trial.").

4. Trial counsel's misstatement in closing argument that the jury should find defendant "guilty" rather than "not guilty" of the charges against him did not prejudice him. The court properly instructed the jury several times, and defendant did not explain how counsel's statement prejudiced his case. *See Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

5. Trial counsel did not have to renew defendant's Crim. P. 29 motion for judgment of acquittal after the jury rendered its verdict. The trial court had ruled on this same motion several times previously in the trial. And, we note, we have reviewed and resolved defendant's challenges to the sufficiency of the evidence supporting the felony menacing and the obstructing a

peace officer convictions. Defendant did not explain how trial counsel's putative omission prejudiced his case. *See id.*

¶ 76 Defendant's remaining contentions of ineffective assistance lacked sufficient specificity, so we conclude that the trial court properly rejected them. *See People v. Zuniga,* 80 P.3d 965, 973 (Colo.App.2003) ("[C]onclusory allegations regarding counsel's allegedly deficient performance are insufficient to demonstrate that defendant may be entitled to postconviction relief and that the record might contain specific facts that would substantiate his claim.") He contends:

1. Trial counsel did not file appropriate pretrial motions. But, except for two motions that we discuss below, defendant does not specify what motions should have been filed.

2. Trial counsel did not file a motion to disclose, take steps to investigate, or attempt to refute res gestae evidence. But he does not state what such a motion should have requested, what investigation should have been done, or what result the investigation might have produced. And the court did not admit the prosecution's res gestae evidence at trial.

3. Trial counsel did not object to or request a continuance after the prosecution belatedly endorsed an expert witness. But he does not state how he was prejudiced by the lack of an objection or a continuance.

4. Trial counsel did not attack the credibility of complaining witnesses. But he does not specify the basis for challenging any witness's credibility that trial counsel allegedly overlooked.

5. Trial counsel did not request any lesser included offense instructions. But defendant does not allege what instruction or instructions would have been appropriate.

6. Trial counsel did not "conduct any meaningful voir dire." But defendant does not explain what such "meaningful" voir dire would have been.

¶ 77 The judgment is affirmed.

JUDGE HAWTHORNE and JUDGE MILLER concur.