23CA1807 Peo in Interest of TKW 06-18-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1807
Chaffee County District Court No. 22JD17
Honorable Kimberly Jo Karn, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of T.K.W.,

Juvenile-Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE HARRIS
Tow and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 18, 2026

---

Philip J. Weiser, Attorney General, Grant R. Fevurly, Senior Assistant Attorney General, Denver, Colorado, for Petitioner-Appellee

Victor T. Owens, Alternate Defense Counsel, Parker, Colorado, for Juvenile-Appellant

¶ 1     T.K.W., the juvenile defendant, was adjudicated delinquent for his role in two criminal incidents.

¶ 2     In the first incident, two masked individuals, one brandishing a gun, pounded on an apartment door and demanded that the two occupants come outside.  In the second incident, which occurred minutes later in the same neighborhood, over a dozen shots were fired at a house across the street from where defendant's girlfriend lived.

¶ 3     A jury found defendant guilty of two counts of menacing and one count of attempted first degree extreme indifference assault but also found that defendant did not use a firearm during the commission of the crimes.  The juvenile court adjudicated defendant delinquent.

¶ 4     On appeal, defendant contends that the evidence was insufficient to support his convictions.  We disagree and affirm.

## I.     Sufficiency of the Evidence

### A.     Standard of Review

¶ 5     On a challenge to the sufficiency of the evidence, we review the record de novo to determine whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light

most favorable to the prosecution, is substantial and sufficient to support a conclusion by a rational jury that the defendant is guilty beyond a reasonable doubt. *Johnson v. People*, 2023 CO 7, ¶ 13.

¶ 6    In conducting our review, we adhere to certain well-settled principles. It is the jury's role to evaluate the credibility of the witnesses, determine the weight to give evidence, and resolve conflicts or inconsistencies in the evidence. *People v. Poe*, 2012 COA 166, ¶ 14. We do not serve as a "thirteenth juror" to second-guess findings that are supported by the evidence, *Thomas v. People*, 2021 CO 84, ¶ 10 (citation omitted), or substitute our judgment for that of the jury, *People v. Strickler*, 2022 COA 1, ¶ 11. Our role is to determine whether the prosecution satisfied its burden to present sufficient evidence to prove beyond a reasonable doubt every element of the charged offense. *Thomas*, ¶ 10.

## B.    Menacing

¶ 7    A person commits menacing "if, by any threat or physical action, he . . . knowingly places or attempts to place another person in fear of imminent serious bodily injury." § 18-3-206, C.R.S. 2025.

¶ 8    Defendant contends that the prosecution failed to prove that he was one of the two masked individuals at the apartment or, even

2

if he was, that he intended to place the occupants in fear of serious bodily injury.

¶ 9    The following evidence was presented at trial:

- R.B., a friend of defendant's, testified that on the night of the incidents, defendant had been "shit talking" the male occupant of the apartment.

- Just before the menacing incident, the occupants, a couple in defendant's extended friend group, received text messages from defendant or his friends threatening to come to the apartment with guns. The couple left the apartment.

- R.B., defendant, and another friend, C.R., walked to the couple's apartment. When they arrived, R.B. waited around the corner while defendant and C.R. went to the front door. R.B. "heard thumping like [defendant and C.R.] were trying to kick in the door."

- Shortly after, the couple received a video over social media showing two masked individuals at their apartment door — one in a black hoodie, armed with a gun, and one in a white hoodie. The person in the black hoodie pointed the gun at the camera, knocked on the door, and said, "Come outside."

The female occupant testified that on receiving the video, she was "scared and in fear for [her] life."

- The couple called the police, and, during an initial interview, they both identified defendant as the person in the black hoodie.

- At trial, R.B. testified that the two people in the video were defendant and C.R.

- C.R. testified that on the night of the incident, he went to the apartment wearing a white hoodie and carrying at least one gun, and he tried to "kick in the door." He initially told police that defendant was with him when the video was recorded, but he recanted that statement at trial.

- A police officer who viewed a version of the video recovered from C.R.'s phone testified that the person wearing the black hoodie had a second gun in his waistband.

- One of defendant's friends told police that "[defendant] and [C.R.] admitted to [making] the video . . . and that they were the ones that did it."

- Before defendant's trial, C.R. pleaded guilty to menacing the couple. He acknowledged that when he went to the couple's

4

apartment, his intent "could have been" to "scare [the male occupant] and beat him up."

¶ 10 Given this evidence, we reject defendant's conclusory argument that "[n]othing in the record directly indicates" he was one of the masked individuals involved in the menacing incident. And even if the evidence failed to establish that he brandished the gun, vacatur is not warranted, as defendant was convicted of misdemeanor, not felony, menacing. *See* § 18-3-206 (misdemeanor menacing becomes a felony if the crime is committed by the use of a firearm, knife, or bludgeon).

¶ 11 To the extent defendant argues that the prosecution failed to prove he acted with the requisite intent, we reject that argument too. "[I]f there is evidence from which the jury could reasonably find that defendant knew his actions, if discovered, would place the victim in fear of imminent serious bodily injury . . . , then the intent element of the offense may be established." *People v. Saltray*, 969 P.2d 729, 732 (Colo. App. 1998). "The defendant's subjective awareness may be inferred from his conduct and the surrounding circumstances; direct evidence need not be presented." *People v.*

*Margerum*, 2018 COA 52, ¶ 56, *aff'd on other grounds*, 2019 CO 100.

¶ 12 The evidence supported a finding that defendant and C.R. went to the apartment and, while one of them brandished a gun, ordered the couple to come outside. C.R. effectively admitted that he intended to scare the male occupant. And the female occupant testified that when she saw the video of defendant and C.R., she feared for her life. *See People v. Lopez*, 2015 COA 45, ¶ 8 ("[W]hat the victim saw or heard, and how the victim reacted, are relevant considerations in determining whether [the] defendant had the requisite intent to place the victim in fear." (citation omitted)). Under the circumstances, the jury could reasonably infer that defendant intended to place the couple in fear of imminent serious bodily injury.

¶ 13 Defendant's theory that he acted with an intent to warn the couple, rather than to scare them, only holds up if, as defendant implies, he was not one of the masked individuals in the video. But the jury found that he was, and we may not "invade the province of the jury by second-guessing its conclusion when the record supports the jury's findings." *People v. Perez*, 2016 CO 12, ¶ 31.

And in any event, the female occupant did not describe the pre-menacing text messages as a warning; she testified that the texts were "threats" to "harm [her] or [the male occupant]."

¶ 14    Accordingly, we conclude that the evidence was sufficient to support the misdemeanor menacing convictions.

### C.    Attempted Extreme Indifference Assault

¶ 15    A person commits first degree extreme indifference assault if, "[u]nder circumstances manifesting extreme indifference to the value of human life, he knowingly engages in conduct which creates a grave risk of death to another person, and thereby causes serious bodily injury to any person."  § 18-3-202(1)(c), C.R.S. 2025.

¶ 16    Defendant was convicted of attempted extreme indifference assault.  The elements of that offense are the same as the completed offense, except that attempted assault requires only a substantial step toward causing bodily injury.  *See People v. Ornelas-Licano*, 2020 COA 62, ¶¶ 19, 23; *see also* § 18-2-101(1), C.R.S. 2025.

¶ 17    Defendant contends that the evidence is insufficient to support his attempted extreme indifference assault conviction

related to the shooting of his girlfriend's neighbor's house. He again argues that the prosecution failed to prove identity and intent.

¶ 18    The following evidence was presented at trial:

- Defendant believed that his girlfriend's neighbors had called the girlfriend a racial slur during a neighborhood dispute a few days earlier.

- After defendant, R.B., and C.R. left the couple's apartment, they started walking back to a friend's house in the neighborhood. On the way, defendant told C.R. about the dispute between his girlfriend and her neighbors; according to R.B., they were "pretty upset about it."

- At that point, defendant and C.R. were collectively in possession of two guns.

- R.B. testified that as the group approached the girlfriend's neighbors' house, defendant and C.R. told him to run. R.B. had "a pretty good idea" that "th[e] house was about to get shot up." Moments after he started to run, R.B. heard thirteen or fourteen shots. A few blocks later, he turned around and saw defendant and C.R. running "right behind [him]."

8

- A homeowner who lived on the same block as the girlfriend's neighbors testified that she heard several "pops" and when she looked out her window, she saw three individuals in hoodies run past her house.

- Later that night, the defendant texted a picture of the house to a friend with the caption, "I think someone got murdled [sic]" and two laughing emojis.

- In a recorded jail call, C.R. asked his mother to contact defendant to "make it right" so he would not have "to do [twenty years] in here."

- Before defendant's trial, C.R. pleaded guilty to illegal discharge of a firearm and received a prison sentence.

¶ 19 With respect to identity, defendant argues only that the evidence did not prove he shot a gun at the neighbors' home. But use of a gun is not an element of attempted extreme indifference assault. *See* §§ 18-2-101(1), 18-3-202(1)(c); *cf. People v. Shockey*, 2026 CO 10, ¶ 34 (explaining that the jury's finding that the defendant did not use a gun did not affect the second degree murder conviction because use of a gun is not an element of second degree murder).

¶ 20    The only question, then, is whether the prosecution presented sufficient evidence to prove that defendant was legally culpable for the assault.  We conclude that, contrary to defendant's argument, the evidence supported the verdict based on a complicity theory.

¶ 21    Complicity is not a separate crime, but a theory of law by which a person becomes accountable for a criminal offense committed by another "if he aids, abets, advises, or encourages the other person in planning or committing that offense" and does so with

> (1) the intent to aid, abet, advise, or encourage the other person in his criminal act or conduct, and (2) an awareness of circumstances attending the act or conduct he seeks to further, including a required mental state, if any, that are necessary for commission of the offense in question.

*People v. Childress*, 2015 CO 65M, ¶ 34.  Complicitor liability may be established by reasonable inference from other established facts and circumstances.  *People v. Chavez*, 190 P.3d 760, 769 (Colo. App. 2007).

¶ 22    Although the prosecution did not present a complicity theory and the court did not instruct the jury on complicity, "the sufficiency of evidence is measured 'against the elements of the

10

offense, not against the jury instructions,'" *People v. Helms*, 2016 COA 90, ¶ 52 (quoting *People v. Vigil*, 251 P.3d 442, 447 (Colo. App. 2010)), or the prosecutor's arguments at trial, *see People v. Perez*, 831 P.2d 1159, 1163 (Cal. 1992) (In reviewing sufficiency of the evidence, "[i]t is elementary . . . that the prosecutor's argument is not evidence and the theories suggested are not the exclusive theories that may be considered by the jury."); *see also Shockey*, ¶¶ 9, 31-33 (concluding that conviction could stand where verdict and interrogatory, taken together, suggested jury convicted on complicity theory despite absence of complicity instruction).

¶ 23    True, the prosecution did not present direct evidence of defendant's intent to aid and abet C.R.'s commission of the crime, but "[i]ntent can rarely be proven other than through circumstantial or indirect evidence." *People v. Sena*, 2016 COA 161, ¶ 16. From the evidence presented and the reasonable inferences to be drawn from it, the jury could reasonably have found that defendant told C.R. about the neighbors' alleged racial insults with the intent to encourage him to retaliate and that defendant was aware that C.R. would retaliate by shooting at the neighbor's house, conduct that showed an extreme indifference to the value of human life and

created a grave risk of death to the neighbors. *See People v. Jefferson*, 748 P.2d 1223, 1232 (Colo. 1988) (shooting into an occupied home is an example of conduct manifesting extreme indifference to the value of human life generally); *People v. Draper*, 2021 COA 120, ¶ 102 (shooting at occupied vehicles created a "real and proximate risk of death" to the victims even if none of them sustained injuries), *overruled on other grounds by*, *Garcia v. People*, 2023 CO 30.

¶ 24    Therefore, we conclude that the evidence was sufficient to support defendant's attempted assault conviction.

## II.    Disposition

¶ 25    The judgment is affirmed.

JUDGE TOW and JUDGE BROWN concur.